490

MUNICIPIO DE SAN JUAN, demandante y recurrido, v. STA-
DIUM & COLISEUM OPERATORS, INC. y OTROS, deman-
dados y recurrentes.

*Números:* R-81-354,    *Resueltos:* 29 de octubre de 1982
R-81-357

*Lourdes R. Díaz Antommattei,* abogada de los recurrentes;
*Maritza Pagán de Joglar,* abogada del recurrido; *Pablo Ca-
rrasquillo,* abogado del Comisionado de Seguros.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del
Tribunal.

La Asociación de Garantía de Seguros Misceláneos, en
interés de la fiadora Builders Insurance Company y el
Comisionado de Seguros —Administrador-Liquidador de
ésta— cuestionan separadamente la sentencia sumaria par-
cial del Tribunal Superior, Sala de San Juan, que les
impuso responsabilidad por el incumplimiento de la fiada
Stadium & Coliseum Operators, Inc. ("Stadium") de cierto
contrato celebrado con el Municipio de San Juan.

Acordamos revisar. Consolidamos ambos casos.

I

No existe controversia sobre los hechos que originan este
litigio. El 16 de septiembre de 1971, el municipio y Stadium
suscribieron "un contrato de concesión" donde el primero
cedía a ésta la operación de las cantinas del Estadio Hiram

Bithorn y el Coliseo Roberto Clemente. Las obligaciones de Stadium para con el municipio eran:

El concesionario le pagará al Municipio durante el término de esta concesión:

(i) una *cantidad básica* de $210,000.00 por el primer año de la concesión, $215,000.00 por el segundo año, $220,000.00 por el tercer año, $225,000.00 por el cuarto año y $225,000.00 por el quinto año, cada anualidad pagadera en plazos mensuales iguales, en o antes del día quince de cada mes subsiguiente.

(ii) una cantidad adicional anual pagadera dentro de los treinta días despues de finalizado cada año, que se computará como sigue:

Por cada asistencia pagada y/o determinada con exactitud comprobable en actividades en que no se cobre entrada, en exceso de 900,000 de asistencia en el Estadio y en el Coliseo durante cada año de esta concesión. Se entiende para fines de esta cláusula que el año de la concesión comienza el día 16 de septiembre de cada año y termina el día último de julio del año subsiguiente:

(a) $0.12........por cada asistencia en exceso de 900,000 hasta 1,200,000

(b) $0.15........por cada asistencia en exceso de 1,200,000 hasta 1,500,000

(c) $0.20........por cada asistencia en exceso de 1,500,000 hasta 2,000,000

(d) $0.50........por cada asistencia en exceso de 2,000,000

El Concesionario le suplirá mensualmente al Municipio durante el término de esta concesión y dentro de los quince (15) días después de finalizar cada mes; junto con el pago correspondiente, un informe detallado del ingreso bruto mensual producto del servicio. Estos informes podrán ser auditados por el Departamento de Finanzas del Municipio y/o por el Director de dicho Departamento o su representante.

    (iii)  una cantidad adicional igual al cincuenta por ciento (50%) del ingreso bruto derivado mensualmente del Servicio pagadero mensualmente dentro de los quince (15) días después de finalizado el mes.

    (iv)  En caso de que el Concesionario opte por renovar este contrato por un término de cinco (5) años adicionales, las cantidades a pagarse por el Concesionario al Municipio durante dicho término adicional serán las cantidades fijadas en los incisos (i), (ii) y (iii) antes copiados, más veinticinco por ciento (25%) de dicha cantidad. (Énfasis suplido.)

Stadium prestó fianza de cumplimiento y pago (*payment and performance bond*) Núm. 77-981, expedida solidariamente por Builders a favor del municipio.

Por alegado incumplimiento, el municipio reclamó rentas desde el 16 de agosto de 1974 hasta el 19 de mayo de 1975, fecha en que se entregó la posesión ($133,750); por asistencia del público en exceso de 900,000 durante el año 1973–74 ($22,747.20); por pago hecho para mantener el equipo en condiciones operacionales ($12,500); por recargos por demora sobre rentas hasta abril de 1979 ($44,485.32); por recargos por demora sobre pago por asistencia hasta abril de 1979 ($6,368.54); y recargos por demora por pago de equipo hasta abril de 1979 ($2,500). El total asciende a $222,351.06. Además se reclama el "50% del ingreso bruto derivado mensualmente del 'servicio' del cual no hay cómputo exacto, pero determinable, desde septiembre 1971 a mayo 1975".

A esta partida se refiere el dictamen que nos ocupa.

## II

El texto de la fianza en cuestión lee en lo pertinente:

KNOW ALL MEN BY THESE PRESENTS, That we STADIUM & COLISEUM OPERATORS INC., as Principal, and BUILDERS INSURANCE COMPANY, as Surety, are held and firmly bound unto MUNICIPIO DE SAN JUAN hereinafter called Owner, in the penal sum of FOUR

HUNDRED THIRTY EIGHT THOUSAND DOLLARS & 00/100 DOLLARS ($438,000.00), to be made, we bind our- selves, our heirs, executors, administrators and successors, jointly and severally, firmly by these presents.

THE CONDITION OF THIS OBLIGATION IS SUCH THAT, whereas the Principal entered into a contract, hereto attached, with Owner, dated *September 3, 1971 for 40% DE LA TOTALIDAD LICITADA DE $1,095,000. DE LA CAN- TIDAD BASICA DE LA RENTA DE LOS PRIMEROS (5) AÑOS.* [*sic*] (Énfasis suplido.)

Varias observaciones son propias. La fianza no cubre toda la suma licitada, sino el cuarenta por ciento (40%) ($438,000) de la *cantidad básica* de la renta por los prime- ros cinco (5) años ($1,095,000). Ese lenguaje indubitada- mente responde al inciso *i* de la cláusula cuarta del contrato que ya hemos transcrito y es congruente con el mismo. La suma de las cinco partidas mencionadas en dicha cláusula *i* monta a $1,095,000.

### III

Ante documentos tan claros, la tesis del municipio recurrido de que Builders es responsable de todas las res- tantes partidas reclamadas —asistencia de público, recar- gos por demora, cincuenta por ciento (50%) de un ingreso bruto y otros cargos por demora innominada— no procede.

La obligación se circunscribe y fue expresamente li- mitada a la partida denominada *"cantidad básica"*. Esa expresión sólo corresponde a los cánones de arrendamiento ascendentes, durante cinco (5) años, a $1,095,000. No hay margen, pues, de error. El análisis matemático compele esta interpretación. La suma de $438,000, como hemos visto, es precisamente el cuarenta por ciento (40%) de esa *"can- tidad básica"* ($1,095,000).

El razonamiento del tribunal a quo de que la fianza alcanza los otros conceptos por haberse incorporado el con- trato a la misma, no es determinante en un caso como el de

autos. Repetimos, aquí, mediante lenguaje claro, preciso y limitativo, se consignó inequívocamente en el documento que la obligación se circunscribía al inciso *i*.

La doctrina prevaleciente de que este tipo de fianza debe ser interpretada liberalmente a favor de su beneficiario —*Demas* v. *Builders Ins. Co.*, 109 D.P.R. 774, 781 (1980)— no abona contra la anterior conclusión. Ese principio no es carta blanca al poder judicial para descartar los pactos y convenios entre las partes.

*Se dictará sentencia en que se modifique el dictamen del Tribunal Superior, Sala de San Juan, fechado 21 de julio de 1981, a fin de limitar la obligación de Builders Insurance Company a lo impagado en concepto de renta, bajo el inciso i de la cláusula cuarta del contrato suscrito entre el municipio y Stadium.*

El Juez Asociado Señor Torres Rigual concurre en el resultado sin opinión. Los Jueces Asociados Señores Díaz Cruz y Rebollo López se inhibieron.