EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Luan Investment Corp.<br>        Demandante-recurrida<br><br>        v.<br><br>Rexach Construction Co., Inc. ; Insurance Company of North America<br>        Demandados–peticionaria la última | Certiorari<br><br>2000 TSPR 182 |

Número del Caso: CC-2000-128

Fecha: 8/diciembre/2000

Tribunal de Circuito de Apelaciones:

Circuito Regional IV

Juez Ponente:

Hon. Roberto L. Córdova Arone

Abogado de la Parte Peticionaria Insurance Company of North America:

Lcdo. Francisco A. Rosa Silva

Abogado de Rexach Construction Co.:

Lcdo. Roberto Santana Aparicio

Abogados de la Parte Recurrida:

Lcdo. José L. Cabiya Morales

Abogado de la tercera demandada Roof Decks of Puerto Rico, Inc.:

Lcdo. Cristian Bernaschina Bobadilla

Materia: Daños y Perjuicios
        Incumplimiento de Contrato

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luan Investment Corp.

     Demandante-recurrida

        vs.

Rexach Construction Co, Inc.;
Insurance Company of North
America

     Demandados-peticionaria
     la última

CC-2000-128    CERTIORARI

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 8 de diciembre de 2000

En marzo de 1991, Luan Investment Corp. --en adelante, "Luan"-- contrató con Rexach Construction Company, Inc. --en adelante, Rexach-- para que ésta construyera el proyectado Centro Comercial Aguadilla Shopping Mall. La ejecución de dicha obra fue garantizada mediante contrato de fianza de ejecución de obras otorgado entre Rexach e Insurance Company of North America, en adelante, Insurance Company[1].

---

[1] **Con este contrato se hizo eficaz lo dispuesto en la cláusula 11.4.1 del Contrato de Ejecución de Obra que dispone:**
     **"The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract."**

En el contrato de fianza, por otro lado, se especificaba la incorporación al mismo de los términos del contrato de ejecución de obra.[2] Sin embargo, en la cláusula 9 de dicho contrato de fianza, en torno a la cual gira la controversia que nos ocupa, se estableció que:

> **"Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable."**

Conforme al contrato de ejecución de obra Rexach garantizó el proceso de instalación y la calidad de la membrana impermeabilizante de los techos por el período de diez años a partir de la fecha en que se completase la instalación de la membrana de impermeabilización en la totalidad del proyecto.

El centro comercial fue inaugurado en 1993, aunque no fue hasta el 14 de agosto de 1997 que el contrato de construcción fue liquidado mediante el pago final a Rexach.

El 19 de octubre de 1998, Luan demandó a Rexach y a Insurance Company en reclamo de la eficacia de la alegada garantía contractual por la labor de impermeabilización del techo del centro comercial. Según Luan, el techo estaba agrietado, por lo que había filtraciones y manchas de humedad en el mismo. Estimó que la corrección de las fallas costaría más de quinientos mil dólares.

Insurance Company radicó moción de <u>desestimación</u> parcial el 17 de febrero de 1999 en la que argumentó que la obligación reclamada en su contra no procedía por el hecho de que, habiéndose inaugurado el centro comercial

---

[2] **Textualmente se dispuso que:**

> **"The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference."**

en 1993 y con ello cesado en su trabajo el contratista de obra, ya habían transcurrido más de dos años desde que el contratista cesó en su trabajo y la fecha en que se radicó la demanda.[3] De este modo, alegaba que su obligación como fiadora se había extinguido.

Así las cosas, el 30 de junio de 1999, el tribunal de instancia denegó la moción de desestimación presentada por Insurance Company. Concluyó que al incorporarse el contenido del contrato de ejecución de obra al contrato de fianza, la fiadora se obligó en igualdad de condiciones que el fiado. El efecto de tal determinación, conforme el tribunal de instancia, era que la fiadora permanecería vinculada durante todos los períodos de garantías que obligan al contratista de la obra, entre ellos el término de obligación decenal pactado y regulado por el Código Civil. De hecho, el tribunal de instancia determinó que el plazo de dos años contenido en el contrato de fianza era uno nulo, por ser el mismo contrario al orden público en detrimento del principio de la obligación decenal.

Denegada una moción de reconsideración, Insurance Company recurrió al Tribunal de Circuito de Apelaciones en recurso de certiorari.[4] Dicho

---

[3] **La demanda fue presentada cinco años después de la fecha de inauguración del centro comercial. Según Insurance Company, el contrato de fianza establece que todas las acciones del dueño de obra contra el contratista, en relación al contrato de ejecución de obra, se tienen que presentar, entre tres alternativas, dentro del plazo de dos años después de que el contratista incurra en "default", o dentro de dos años desde que cese en su trabajo, para que dicha reclamación pueda oponerse a ella como tal fiadora.**

[4] **Argumentó la comisión de los siguientes dos errores:**

> **"[...]denegar nuestra moción de desestimación, porque la demanda contra la fiadora fue presentada más de cinco (5) años después de que el contratista fiado cesó de hacer trabajo alguno en el proyecto (que fue aceptado e inaugurado por la dueña demandante) y el instrumento de fianza redactado por la institución organizada por la profesión que representa a los dueños de obras establece un inequívoco término de dos (2) años para reclamar a la fiadora desde la fecha en que la contratista cesa de trabajar; y no cubre las garantías del trabajo ya terminado y aceptado, porque la fianza**

tribunal apelativo intermedio <u>confirmó</u> la resolución recurrida, concluyendo que "la obligación del fiador se extingue al mismo tiempo que la del deudor y por las mismas causas que las demás obligaciones. La obligación del deudor contractualmente subsiste hasta que las garantías venzan, por lo que la obligación del fiador también continúa." Añadió que era aplicable al caso el principio de que las fianzas expedidas por compañías que se dedican a la prestación de las mismas con fines de lucro deben ser interpretadas liberalmente a favor de sus beneficiarios. Además, dicho foro judicial reiteró la conclusión de que la cláusula novena del contrato de fianza que hemos transcrito constituye una violación al orden público al acortar el plazo decenal establecido por el Art. 1483 del Código Civil de Puerto Rico, 31 L.P.R.A. Sec. 4124.

Inconforme, recurrió ante este Tribunal Insurance Company alegando que erró el Tribunal de Circuito de Apelaciones al:

> "[...]concluir que al incorporar el contrato [de ejecución de obra] a la fianza[,] se afianzaron todas las obligaciones contractuales y legales del contratista, y el tiempo para reclamarlas, incluyendo garantías, no obstante el lenguaje limitativo contenido en el instrumento de fianza en cuanto a tiempo y alcance del afianzamiento";

> "[...]determinar que la fiadora está sujeta a la obligación decenal impuesta al contratista y que, por ende, resulta nula cualquier limitación de tiempo para reclamar establecida expresamente en la fianza";
> "[...]negarse a revocar la Resolución del Tribunal de Instancia y al no desestimar el pleito contra la fiadora."

**El 17 de marzo de 2000 expedimos el auto. Contando con la comparecencia de ambas partes, y estando en posición de resolver, procedemos a así hacerlo.**

I

Es un principio firmemente enraizado en nuestro sistema de derecho que "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a

---

**está limitada a eventos que ocurran antes de que el proyecto objeto del contrato afianzado llegue a la etapa de "terminación sustancial" (substantial completion)."**

la moral, ni al orden público." Art. 1207 del Código Civil, 31 L.P.R.A. Sec. 3372.

Bajo ese tenor, en Hernández v. Méndez & Associates Development Corp.,105 D.P.R. 149 (1976), reiteramos que la libertad de contratación privada no es irrestricta: la ley, la moral y el orden público son sus frenos. "Orden público" es el conjunto de valores eminentes que guían la existencia y bienestar de una sociedad. El concepto orden público recoge y ampara un interés social dominante por su trascendencia, por el número de personas que afecta y por la valía de los derechos que tiende a proteger. Wiley v. Livingston, 376 U.S. 543, 549-50 (1964). En gran medida el orden público es acopio de normas de moral y de ética pública que en ocasiones alcanzan su exposición en ley, pero que aun sin esa expresa declaración legislativa, constituyen principios rectores de sabio gobierno nacidos de la civilización y fortalecidos por la cultura, la costumbre, por la manera de ser, en fin por el estilo de una sociedad. Castán ve tanto en la costumbre como en la ley el modo de manifestación de la voluntad social predominante. Derecho Civil, Tomo 1, Vol. 1 deg., Décima Edición (1962), pág. 335.

Bajo tales consideraciones, en González v. Agostini, 79 D.P.R. 510 (1956), este Tribunal rechazó como inválida, por ser contraria al orden público, la modificación o renuncia al plazo decenal de garantía fijado por el Art. 1483 del Código Civil, 31 LPRA sec. 4124,[5] aun cuando por no prohibirla la ley pareciera una convención propia de intereses privados. Al así decidir, coincidimos con el criterio de los comentaristas, entre ellos Scaevola, a los efectos de que: "...la libertad de estipular está coartada

---

"[...] declarar no ha lugar a nuestra moción de reconsideración de su denegatoria a la de desestimación."

[5] "El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez (10) años, contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del suelo o de la dirección.

Si la causa fuere la falta del contratista a las condiciones del contrato, la acción del indemnización durará quince (15)

por los fueros de la moral y el interés públicos.  Si el pacto a que nos estamos refiriendo fuese válido por él resbalarían todas las complacencias de un arquitecto despreocupado para con un dueño codicioso, y la seguridad y el interés públicos quedarían faltos de la garantía que implica la responsabilidad personal de un técnico director y de un empresario constructor. Por esta consideración, pensamos que el pacto por el cual el dueño renuncia al plazo de garantía es inmoral, contrario al público interés, y, por consiguiente, nulo, pudiendo ejercitar la acción de nulidad los obligados principal o subsidiariamente en virtud del contrato de obra. 24 Scaevola, págs. 109 a 111." González v. Agostini, ante, a las págs. 516-17. Esa presencia de un interés público fue reiterada recientemente por este Tribunal al dictaminar que debemos tener presente que el Art. 1485 del Código Civil, al igual que otros que tratan de la responsabilidad del contratista, hay que analizarlo en armonía con la tendencia filosófica plasmada en las leyes promulgadas para proteger al consumidor de prácticas y sutilezas, aparentemente legales, pero que entrañan el germen y vicio de la ilegalidad y la inmoralidad.  Hernández Denton v. Western Pines Corp., 103 D.P.R. 741 (1975). Hernández v. Méndez & Associates Development Corp., ante.

En fin, hemos resuelto que la renuncia a la garantía decenal que obliga al contratista o arquitecto es nula por ser contraria al orden público. Esto es, el contratista, o el arquitecto en su caso, queda obligado en relación al inmueble invariablemente durante el plazo decenal. Sin embargo, nada dispone dicho artículo en referencia a la figura del fiador, cuya presencia es tan ordinaria en el proceso de garantía de la obligación contractual de ejecución de obras.

## II

Según se dispone en nuestro Código Civil, "[p]or la fianza se obliga uno a pagar o cumplir por un tercero, en el caso de no hacerlo éste."  Art. 1721 del Código Civil, 31 L.P.R.A. Sec. 4871. Sin embargo, el antes mencionado artículo, que aparenta atar inescapablemente al fiador a los

---

años." Art. 1483, Código Civil de Puerto Rico, 31 L.P.R.A. Sec.

**términos absolutos de la obligación del tercero, resulta luego flexibilizado**

**o relajado por el Art. 1725 del Código Civil, 31 L.P.R.A. Sec. 4875, al**

**aclararse que:**

> "El fiador puede obligarse a menos, pero no a más que el deudor principal, tanto en la cantidad como en lo oneroso de las condiciones.
>
> Si se hubiera obligado a más, se reducirá su obligación a los límites de la del deudor." (Énfasis suplido.)

Esto es así ya que el contrato de fianza es uno accesorio, aunque separado y distinto, al contrato que establece la relación obligatoria principal o garantizada. Por lo tanto, el fiador puede obligarse según términos particulares que lo harían potencialmente responsable en menor medida que al fiado en su obligación contractual.

Tal como resolviéramos en Municipio de San Juan v. Stadium & Coliseum Operators, Inc., 113 D.P.R. 490 (1982), el hecho de haberse incorporado el contrato de ejecución de obra al de fianza, no es determinante en un caso como el de autos. En el caso que nos ocupa, mediante lenguaje claro, preciso y limitativo, se consignó inequívocamente en el documento del contrato de fianza que la obligación del fiador de garantizar la ejecución del contrato de obra sería eficaz ante reclamaciones judiciales hechas dentro del plazo de dos años a partir del momento en que el contratista incurriera en "default"; o dentro de los dos años posteriores a la fecha en que el contratista cesara en su trabajo; o dentro del plazo de dos años a partir de la fecha en que la fiadora rehusara o fallara en cumplir con sus obligaciones bajo el contrato de fianza, lo que ocurriera primero. Esto tiene eficacia jurídica en atención al hecho de que el Código Civil no extiende la obligación decenal al fiador y al hecho de que el contrato de fianza se constituye legalmente en sus propios términos.

Como expresáramos anteriormente, el contrato de fianza es uno separado y distinto, aunque accesorio, al contrato de ejecución de obra que garantiza. Es evidente que en el presente caso, el fiador simplemente se obligó a menos que el contratista. No hizo suya la totalidad de la obligación del

---

**4124. Véase, González v. Agostini, 79 D.P.R. 510 (1956).**

contratista y tal limitación la hizo expresa y claramente en la cláusula novena del contrato de fianza. El hecho de que el contrato de ejecución de obra, que expresa la obligación decenal del contratista en relación a la impermeabilización del techo en controversia, se haya incorporado al contrato de fianza no milita contra la facultad del fiador de contratar una relación de fianza de acuerdo a los términos que estime convenientes, aunque esto signifique obligarse a menos que el contratista.

El dueño de la obra estuvo facultado para rechazar, por insuficiente según su criterio, la fianza sometida por el contratista. Si el dueño de la obra deseaba que la fianza respondiera por la obligación decenal, debió exigirlo de ese modo y solicitar la eliminación de la cláusula que disponía para la limitación temporal de la obligación de garantía.

Aclaramos que "[l]a doctrina prevaleciente de que este tipo de fianza debe ser interpretada liberalmente a favor de su beneficiario --Demas v. Builders Ins. Co., 109 D.P.R. 774, 781 (1980)-- no abona contra la anterior conclusión.  Ese principio no es carta blanca al poder judicial para descartar los pactos y convenios entre las partes." Municipio de San Juan v. Stadium & Coliseum Operators, Inc., ante.

**Una vez resuelto que el plazo limitativo de dos años para reclamar contra el fiador, a partir de la fecha en que el contratista cesó en su trabajo, es legítimo en derecho, <u>nos corresponde decidir ahora si procedía que el tribunal de instancia dictara sentencia desestimando la causa de acción contra el fiador</u>.**

**III**

En el caso de autos, Insurance Company radicó ante el tribunal de primera instancia una moción titulada "Moción de desestimación", la cual acompañó con copia del contrato de fianza de ejecución de obra. En dicha moción, se hace referencia a los hechos alegados en la demanda y, con base en ellos, se alega la caducidad de la causa de acción en virtud de la eficacia de una cláusula contractual que en la moción se ofrece como evidencia. Posteriormente, la parte demandante radicó una "Oposición a la moción de

desestimación" que acompañó con documentos tales como el Contrato de Ejecución de Obra, sus especificaciones y el Contrato de Fianza de Ejecución.

**Evidentemente, la moción de desestimación radicada se regía por las disposiciones de la Regla 10.2 de las Reglas de Procedimiento Civil, la cual establece que:**

> "**Toda defensa de hechos o de derecho contra una reclamación en cualquier alegación, ya sea demanda, reconvención, demanda contra coparte, o demanda contra tercero, se expondrá en la alegación respondiente que se haga a las mismas, en caso de que se requiera dicha alegación respondiente, excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante moción debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) <u>dejar de exponer una reclamación que justifique la concesión de un remedio</u>; (6) dejar de acumular una parte indispensable. Una moción en que se formule cualesquiera de estas defensas deberá presentarse antes de alegar, si se permitiere una alegación adicional. No se entenderá renunciada ninguna defensa u objeción por haber sido formulada conjuntamente con otra u otras defensas u objeciones en una alegación respondiente o moción. Si una alegación formulare una reclamación contra la cual la parte no estuviere obligada a presentar una alegación respondiente, dicha parte podrá mantener en el juicio cualquier defensa de hechos o de derecho en contra de dicha reclamación. <u>Si en una moción en que se formulare la defensa número (5) se expusieren materias no contenidas en la alegación impugnada y éstas no fueren excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 hasta su resolución final y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a dicha moción bajo dicha regla</u>. (Énfasis suplido.)**

Como hemos visto, en la "Moción de desestimación" que nos ocupa, la co-demandada Insurance Company trajo a la atención del tribunal de instancia una materia no contenida en las alegaciones: la posible caducidad de la causa de acción en virtud de los términos del contrato de fianza de ejecución de obra. Por tal razón, procedía resolver la misma, según los términos dispuestos para la tramitación de una moción de sentencia sumaria, bajo el palio de la Regla 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 36.2, la cual dispone que:

> "**Una parte contra la cual se haya formulado una demanda, reconvención o demanda contra coparte, demanda contra tercero, o contra la cual se solicite una sentencia declaratoria podrá, en cualquier momento, presentar una moción <u>basada o no en declaraciones juradas</u> para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación." (Énfasis suplido.)**

Como se sabe, la sentencia sumaria es un mecanismo procesal extraordinario que tiene el propósito de facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales y, por tanto, no ameritan la celebración de un juicio en su fondo. Pilot Life Ins. Co. v. Crespo Martínez, 136 D.P.R. 624 (1994).

Así, la Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece que se podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, surge que no hay controversia real sustancial en cuanto a ningún hecho material, y como cuestión de derecho debe dictarse sentencia a favor de la parte promovente.

Al enfrentarse a una moción de sentencia sumaria el tribunal: (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. PFZ Prop., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881 (1994). Por ello, la parte promovida deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente.

A tales efectos, la Regla 36.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.5, dispone que "la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma tan detallada y específica como lo hubiere hecho la parte promovente, exponiendo aquellos hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De no hacerlo así, se dictará en su contra la sentencia sumaria si procediere".

Sin embargo, hemos destacado en el pasado que "el hecho de que una parte presente una moción de sentencia sumaria no es garantía [de] que una vez se determine que ésta procede, necesariamente hay que resolver a favor de quien la presentó". Consejo de Titulares del Condominio Parkside, etc.

V. MGIC Financial Corporation, Inc., 129 D.P.R. 538 (1991). El tribunal debe analizar los hechos de la forma más favorable a la parte que se opone a ella y emitir sentencia a favor de la parte a la cual le asiste el derecho. Colegio de Ingenieros v. A.A.A., 131 D.P.R. 735 (1992).

**Partiendo de tales postulados, concluimos que no erró el Tribunal de Circuito de Apelaciones al confirmar la resolución del tribunal de primera instancia en el caso de autos, aun cuando sus fundamentos estuvieron errados. No procedía desestimar sumariamente la causa de acción. Es así, pues no hay certeza del momento en el cual comenzó a correr el plazo de dos años que nos ocupa en esta controversia. Esto es, existe una controversia sobre un hecho material y fundamental para la resolución del caso. Veamos.**

**De las alegaciones surge que el centro comercial fue inaugurado en 1993; la demanda, sin embargo, fue radicada el 19 de octubre de 1998. En caso de que exista coincidencia entre la fecha de la inauguración y la fecha en que el contratista cesó en su trabajo, como alega la peticionaria, indudablemente no existiría causa de acción alguna por parte de la demandante. Es de notar, sin embargo, que no se determinó que, como cuestión de hecho, ambas fechas coincidan.**

Por otro lado, la obra fue pagada finalmente el 14 de agosto de 1997, esto es, poco más de un año antes de radicada la demanda y aproximadamente cuatro años después de la inauguración de la misma. Alega la demandante-recurrida que el término de dos años debe ser calculado a partir de esta fecha. No le asiste la razón.

El contrato de fianza que vincula a las partes en el caso de autos dispone tres momentos distintos a partir de los cuales, y durante el plazo de dos años, pudiera reclamarse judicialmente contra la fiadora el cumplimiento de las obligaciones descritas en el contrato de ejecución de obra.[6] Esto es, la obligación principal de ejecutar la obra y la de responder por sus garantías limitadamente por el plazo de dos años a partir de la

---

**[6] El plazo de dos años comenzará a decursar con la ocurrencia de cualquiera de los tres supuestos fácticos que nos ocupan. Es decir, con el que ocurra primero.**

ocurrencia de cualquiera de los tres supuestos fácticos a que hemos hecho referencia:

–desde que el contratista incurrió en "default"; o
–desde que el contratista cesó en su trabajo; o
**–desde que la fiadora rehusa cumplir, o incumple, con
  su obligación bajo el contrato de fianza.**

Es evidente que el segundo de los supuestos fácticos, el cual se invoca en el caso de autos, se refiere al momento en que el contratista termina la obra y la misma es aceptada. Sin duda, se refiere a una etapa de la relación contractual que exige algo más que el hecho inmediato de retirarse físicamente de la obra, pues ese también es un supuesto de la primera de las tres alternativas expuestas. El cese en el trabajo a que se refiere este segundo supuesto es aquél que se consuma con la aceptación de la obra. Sólo entonces el contratista queda liberado, evidenciado el cumplimiento del contrato de ejecución de obra y sujeto sólo a responder por las garantías. Mientras la obra no sea aceptada es evidente que el contratista sigue sujeto a su trabajo y a sus responsabilidades como tal. Tampoco puede entenderse que ha cesado en su trabajo por el hecho de que la obra haya sido entregada al dueño de la misma para su inauguración, pues es sabido que la entrega de la obra es, en derecho, un concepto distinto al de la recepción, mediante aceptación de la obra.[7] Por lo tanto, el momento determinante para señalar el cese en el trabajo del contratista es el momento en que su obra es aceptada o debió serlo.

En conclusión, no procedía la desestimación sumaria de la demanda, pues, aplicando el principio de favorabilidad exigido en estos casos, es evidente que en el momento procesal en que se presentó la moción y luego de estudiada la misma, junto con la oposición radicada, existía controversia sobre un hecho material que impedía que se dictara sentencia sumaria en el caso de autos.

Procede, por lo tanto <u>confirmar</u> la sentencia recurrida y devolver el caso al tribunal de instancia para que dilucide la causa conforme a lo anteriormente expuesto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[7] **Véase Puig Brutau, <u>Fundamentos de Derecho Civil</u>, Tomo II, Vol. II, Segunda edición, Pág. 469.**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Luan Investment Corp.
        Demandante-recurrida

              vs.

                         CC-2000-128     CERTIORARI

Rexach Construction Co, Inc.;
Insurance Company of North
America

        Demandados-peticionaria
        la última



                          SENTENCIA

        San Juan, Puerto Rico, a 8 de diciembre de 2000



        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones; devolviéndose el mismo al Tribunal de Primera Instancia, Sala Superior de Aguadilla, para que dilucide la causa conforme a lo anteriormente expuesto.

        Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre en el resultado sin opinión escrita.


                              Isabel Llompart Zeno
                                Secretaria del Tribunal Supremo