Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| SHANNON RAY ROBNETT, JESSIE M. ROBNETT<br><br>Demandante Recurrida<br><br>v.<br><br>**NAIDA CANDELARIA**, VALERIE OSTLANDER, CONSEJO DE TITULARES CONDOMINIO MAR AZUL, JUNTA DE DIRECTORES DEL CONSEJO DE TITULARES DEL CONDOMINIO MAR AZUL<br><br>**Demandada Peticionaria** | KLCE202500383 | Certiorari procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm.: SJ2021CV01933 (Sala 409)<br><br>Sobre: *Injunction* (Entredicho Provisional, *Injunction* Preliminar, Permanente) |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa y la Jueza Díaz Rivera.

Candelaria Rosa, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 19 de mayo de 2025.

Comparece la señora Naida Candelaria Guzmán (señora Candelaria Guzmán o peticionaria) vía *certiorari* y solicita que revoquemos la *Resolución* del Tribunal de Primera Instancia, Sala Superior de Carolina, emitida el 12 de marzo de 2025. En dicho dictamen, se resolvió sin lugar a dos (2) solicitudes de sentencia sumaria. Por los fundamentos que expondremos, denegamos expedir el auto de *certiorari*.

En síntesis, el caso de epígrafe trata de una demanda de interdicto preliminar, *injunction* permanente y daños y perjuicios. Según el expediente, el 27 de enero de 2021, la señora Candelaria Guzmán y la señora Valerie Ostlander (señora Ostlander) otorgaron un *Contrato de*

Número Identificador

RES2025 _____

*Opción de Compra* para el Apartamento A-1 del Condominio Mar Azul en el municipio de Carolina. Dicho contrato dispone que (1) el apartamento se vende por el convenido y ajustado precio de doscientos diecisiete mil ($217,000.00) dólares, sujeto a tasación; (2) la recurrida entregó un depósito de buena fe de seis mil quinientos diez ($6,510.00) dólares; (3) el término de la opción vencería el 2 de abril de 2021, sesenta y cinco (65) días contados desde la fecha en que ambas partes firmaron el contrato; (4) durante el referido término, la señora Candelaria Guzmán no podrá en forma alguna vender, hipotecar, enajenar, gravar, ceder o transferir la propiedad; y (5) de no otorgarse la compraventa dentro del plazo de opción debido a retrasos involuntarios, las partes podrán extender el contrato.

A pesar de lo anterior, en un *bulletin board* del Condominio Mar Azul se publicó que el Apartamento A-1 estaba en venta por el valor tazado de doscientos treinta y dos mil ($232,000.00) dólares. Dicho anuncio tenía fecha de 28 de febrero de 2021. Al respecto, el señor Shannon Ray Robnett y la señora Jessie M. Robnett (conjuntamente "los Robnetts"), mediante su corredor de bienes raíces y mandatario, se comunicaron con la señora Candelaria Guzmán en una serie de cartas, correos electrónicos y mensajes de textos pendientes de autenticar, para indicar que vieron el anuncio de la venta del apartamento el mismo 28 de febrero de 2021 a través del *website* ClasificadosOnline y/o el referido *bulletin board*. Más aun, los Robnetts querían pagar el precio de tasación o doscientos treinta y dos mil ($232,000.00) dólares, o cualquiera que fuera menor, a pesar de supuestamente conocer de la existencia de la opción de compraventa.

Poco después de estas comunicaciones, los Robnetts presentaron una demanda de *injunction* contra la señora Candelaria Guzmán y argumentaron que, por ser propietarios de un apartamento en el Condominio Mar Azul, estos tenían derecho de adquisición preferente. En vista de lo anterior, solicitaron que el Tribunal de Primera Instancia emitiera una orden de cese y desista para prohibirle a la señora Candelaria Guzmán continuar con los trámites de venta de su apartamento, le notificara a la tercera compradora de la condición restrictiva y que se le permitiera subrogarse en la misma posición del tercero comprador. A raíz de ello, la representante legal de la peticionaria recomendó a la señora Candelaria Guzmán esperar hasta que dicho Tribunal atendiera la demanda para continuar con el proceso de la opción de compraventa.

Luego de los Robnetts presentar una demanda de *injunction* enmendado y otros trámites procesales, el 14 de junio de 2021, la señora Ostlander respondió con una reconvención contra los Robnetts y alegó que las actuaciones culposas de los Robnetts ocasionaron la paralización del proceso de compraventa entre la peticionaria y la recurrida. El 4 de noviembre de 2021, ante la solicitud conjunta de sentencia sumaria de la señora Candelaria Guzmán y la señora Ostlander, el foro primario dictó sumariamente una *Sentencia Parcial* en contra de los Robnetts y dejó sin efecto la paralización de la compraventa del Apartamento A-1.

Posteriormente, la señora Ostlander presentó una demanda de coparte contra la señora Candelaria Guzmán y alegó que el incumplimiento de la señora Candelaria Guzmán con su obligación contractual le ocasionó daños y perjuicios, por lo cual solicitaba que se

le ordenara a la peticionaria a (1) cumplir con el *Contrato de Opción de Compra*; y (2) pagar la suma no menor de cincuenta mil ($50,000.00) dólares por daños y perjuicios, más costas, intereses y honorarios de abogado.

Así las cosas, 14 de enero de 2022, la señora Candelaria Guzmán y la señora Ostlander otorgaron un *Addendum a Contrato de Opción de Compra* (*Addendum*) y en la cual dispusieron que la señora Ostlander no pudo ejercer su opción oportunamente debido a los reclamos de los Robnetts. Por tanto, habiendo recurrido desestimado con perjuicio dicho caso, las partes extendieron el término de opción para que el mismo venciera el 20 de marzo de 2022. No obstante, por los Robnetts recurrir ante el Tribunal Supremo luego del Tribunal de Apelaciones confirmar la *Sentencia Parcial* en el caso KLAN202200064, y según unos correos electrónicos entre la representación legal de la peticionaria y recurrida, la señora Ostlander no pudo obtener el seguro de título antes que venciera el término dispuesto en el *Addendum*.

Luego del Tribunal Supremo denegar expedir el auto de *certiorari* de los Robnetts, la señora Ostlander declaró en una deposición que (1) no ha podido encontrar otro apartamento que tenga un tamaño y precio similar al de controversia; (2) al mudarse a Puerto Rico en junio de 2020 tuvo que alquilar un almacén como parte de la mudanza; (3) alquiló otro apartamento en junio de 2020; y (4) no pudo obtener el seguro de título por existir un pleito en el tribunal sobre el apartamento en controversia, por lo cual FirstBank no podía desembolsar el préstamo. Por otro lado, documentos sometidos al Tribunal recurrido parecen demostrar que (1) la señora Ostlander figura como una arrendataria de un apartamento con una renta mensual de mil

trescientos cincuenta ($1,350.00) dólares, aunque el *Contrato de Arrendamiento* no contiene firmas; (2) para el 20 de diciembre de 2021, la señora Ostlander ha pagado la renta mensual, al igual que un *invoice* del 15 de octubre de 2022 demuestra un pago por la misma cantidad, redondeando a una suma de veinticinco mil seiscientos cincuenta ($25,650.00) dólares; (3) unos recibos de pagos revelan que, entre el 25 de marzo de 2021 y el 25 de diciembre de 2021, la señora Ostlander tuvo que pagar la suma de trescientos noventa ($390.00) dólares por un almacén en la ciudad de Nueva York; y (4) otros recibos exponen que entre el 19 de abril de 2021 y el 18 de diciembre de 2021, la señora Ostlander pagó por lo menos mil ochocientos noventa y dos dólares con noventa y ocho centavos ($1,717.98) para utilizar otro almacén.

Después de varios trámites procesales, la señora Candelaria Guzmán y la señora Ostlander, separadamente, solicitaron que se emitiera sentencia sumaria, ante los cuales el foro primario resolvió sin lugar, aduciendo que los siguientes, en resumidas cuentas, quedan como hechos controvertidos: (1) cómo y cuándo el señor Shannon Ray Robnett vio el anuncio de la venta del Apartamento A-1; (2) si al ver dicho anuncio el señor Shannon Ray Robnett no tenía conocimiento sobre el *Contrato de Opción de Compra* y que dicho contrato era por un precio menor del que se publicó; (3) por qué la recurrida no consiguió el financiamiento en el periodo estipulado para ejercer la opción y, por efecto, no se llevó a cabo el cierre de la compraventa; (4) en qué fecha venció el *Contrato de Opción de Compra* y si la señora Candelaria Guzmán tenía intención de extender dicho contrato; (5) si la peticionaria tuvo la intención de vender el apartamento en controversia a la señora Ostlander; (6) si la peticionaria y los Robnetts estaban

negociando para comprar la propiedad por un precio más alto; y (7) si la recurrida sufrió daños como resultado de las actuaciones y omisiones de los Robnetts y la peticionaria, y el valor de los mismos. No obstante, es menester mencionar que el foro primario incluyó como un hecho incontrovertido el que, durante la vigencia del *Addendum*, la señora Ostlander no obtuvo el desembolso del préstamo hipotecario para poder adquirir la propiedad por no conseguir un seguro de título a causa del litigio iniciado por los Robnetts.

Insatisfecha, la peticionaria recurre ante este Tribunal y alega que el foro primario erró e incurrió en craso abuso de discreción en su apreciación de la prueba e interpretación del derecho, y al denegar la solicitud de sentencia sumaria de la señora Candelaria Guzmán. En oposición, la recurrida argumenta que el foro primario actuó correctamente al determinar que todavía existen controversias reales y sustanciales, más que la peticionaria no cumple con los criterios para este foro expedir un auto de *certiorari*.

Vale recordar que el auto de *certiorari* es el vehículo procesal, discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos. *BPPR v. Gómez Alayón et al.*, 213 DPR 314 (2023) (citando a *IG Builders et al. v. BBVAPR*, 184 DPR 307 (2012)); Regla 40 del Tribunal de Apelaciones (4 LPRA Ap. XXII-B). Véase, también, *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994 (2021) (citando Art. 670 del Código de Enjuiciamiento Civil de 1933 (32 LPRA sec. 3491); *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703 (2019)). Conforme a la referida Regla 52.1, los criterios que permiten la expedición de un *certiorari* consisten en revisar una orden de carácter dispositivo o resolución según las Reglas

56 y 57 de *Procedimiento Civil*. Regla 52.1 de Procedimiento Civil, *supra*. Por lo tanto, la función del Tribunal Apelativo frente a la revisión de controversias a través del *certiorari* requiere valorar la actuación del foro primario y predicar su intervención en si la misma constituyó un abuso de discreción; en ausencia de evidencia suficiente de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia. Véase, también, *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021) (citando a *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920 (2015); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *Rivera y otros v. Bco. Popular*, 152 DPR 140 (2000); *Meléndez v. Caribbean Int'l News*, 151 DPR 649 (2000)).

A esos efectos, el mecanismo procesal de la sentencia sumaria se rige por la Regla 36 de *Procedimiento Civil* y tiene como finalidad la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales. Véase Regla 36 de Procedimiento Civil de 2009 (32 LPRA Ap. V); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023) (citando a *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964 (2022)). Así, la Regla 36.2 permite que cualquiera de las partes pueda solicitar que se dicte sentencia sumaria sobre la totalidad o sobre cualquier parte de una reclamación. Regla 36.2 de Procedimiento Civil, *supra*. Véase, también, *Torres Pagán et al. v. Mun. de Ponce,* 191 DPR 583 (2014). A su vez, se ha establecido que el peticionario debe establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, es decir, suficiente para que sea necesario dirimirlo en un juicio plenario. Regla 36.1 de Procedimiento Civil, *supra*; *Oriental*

*Bank v. Caballero García*, 212 DPR 671 (2023) (citando a *Mun. de Añasco v. ASES et al.*, 188 DPR 307 (2013)). Véase, también, *Ramos Pérez v. Univisión,* 178 DPR 200 (2010) (citando a *Luan Invest. Corp. v. Rexach Const. Co.*, 152 DPR 652 (2000)).

Asimismo, la Regla 36 regula la oposición a que se dicte sentencia sumaria, la cual debe citar específicamente los párrafos enumerados que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. Regla 36.3(b)(2) de Procedimiento Civil, *supra*. Como se puede apreciar, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones. *Roldán Flores v. M. Cuebas et al*., 199 DPR 664 (2018) (citando a *Rodríguez Méndez et al. v. Laser Eye*, 195 DPR 769 (2016); *Ramos Pérez v. Univisión, supra*). En la medida en que meras afirmaciones no bastan para derrotar una solicitud de sentencia sumaria, la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados. Íd.; *Ramos Pérez v. Univisión*, *supra*.

En cuanto al estándar de revisión aplicable, el Tribunal de Apelaciones utilizará los mismos criterios que el foro de primera instancia al determinar la correspondencia de la sentencia sumaria, aunque limitado a considerar aquellos documentos presentados en el foro primario y obligado a cumplir con la Regla 36.4 de Procedimiento Civil, *supra*. Debemos, por tanto, examinar *de novo* el expediente y verificar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma; luego, revisar si en realidad

existen hechos materiales en controversia y, de encontrar que los hechos materiales realmente están incontrovertidos, revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100 (2015).

A raíz de ello, el contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Art. 1230 del Código Civil de 2020, 31 LPRA sec. 9751. Para perfeccionarse el contrato, las partes contratantes deberán manifestar su consentimiento sobre el objeto y la causa del acuerdo, excepto en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Íd., sec. 9771. Asimismo, las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público y, en efecto, los contratos tienen fuerza de ley entre las partes. Íd., sec. 9753. Además, si los términos del contrato son claros y no dejan duda sobre la intención de las partes, se interpretará el lenguaje en su sentido literal y, de las palabras parecer contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado. Íd., sec. 6342.

Conforme lo anterior, la opción de compra es aquel derecho que faculta a su titular para que acepte, y así decida, durante un plazo determinado, el perfeccionamiento del contrato de compraventa que ha sido ya acordado en todos sus aspectos fundamentales y secundarios y a cuyo cumplimiento se mantiene comprometido el concedente durante el plazo prefijado. Íd., sec. 8821. Para dicha opción de compra constituirse, se debe asegurar que el contrato contenga (1) el plazo de duración del derecho y, si procede, el plazo para su ejercicio; (2) en su

caso, la voluntad del constituyente o de los constituyentes de configurar el derecho con carácter real; (3) el precio o contraprestación para la adquisición del bien o los criterios para su fijación, cuando se trate de un derecho de opción a una adquisición onerosa, indicando el precio estipulado para su adquisición; y (4) la prima pactada para su constitución, cuando el derecho se constituye a título oneroso, indicando el precio convenido. Íd., sec. 8822. Dicha opción, además, solo podrá constituirse por un tiempo máximo de cinco (5) años, si recae sobre bienes inmuebles. Íd., sec. 8823. No obstante, el ejercicio del derecho de opción a la adquisición onerosa requiere el pago previo o simultáneo del precio fijado, determinado según los criterios establecidos, o el que resulta de la aplicación de las cláusulas de estabilización, si se han previsto. Íd., sec. 8824.

Por último, toda persona está obligada a reparar el daño que causó por culpa o negligencia. Íd., sec. 10801. De la parte perjudicada reclamar resarcimiento por los daños sufridos, esta deberá establecer (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado; y (3) el acto u omisión cual tiene que ser culposo o negligente. *Pérez Hernández et al. v. Lares Medical et al.*, 207 DPR 965 (2021) (citando a *López v. Porrata Doria*, 169 DPR 135 (2006)). De haber varias personas que causaron los alegados daños por actos independientes de culpa o negligencia, la responsabilidad de estos frente al perjudicado será solidaria sin perjuicio del derecho de nivelación entre los cocausantes. Art. 1539 del Código Civil de 2020, 31 LPRA sec. 10804.

Examinado el expediente con rigor y a la luz del derecho concernido, no advertimos que el Tribunal de Primera Instancia haya

abusado de su discreción o haya actuado de manera parcial, prejuiciada o errada al resolver sin lugar la solicitud de sentencia sumaria de la peticionaria. Del expediente ante nuestra consideración se desprende que, aunque se presentaron varios documentos, transcripciones de deposiciones y escaneos de mensajes de textos, estos deben ser autenticados—en su existencia al igual que en su contenido—para dilucidar la naturaleza de su veracidad. Dicha autenticidad, al igual que cualquier documento omitido cuya existencia debe acreditarse, ha de evaluarse mediante un proceso riguroso durante vista judicial. De esta manera el foro recurrido podrá interpretar y adjudicar credibilidad a las declaraciones de las partes y, en efecto, determinar si la paralización y eventual cancelación del cierre del *Contrato de Opción de Compra* ocasionó algún daño a la recurrida y, de resolverse así, determinar quién tuvo la culpa y qué daño hubo, si alguno.

Por los fundamentos expuestos, denegamos expedir el auto de *certiorari*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones