El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
Comparece el peticionario, Sr. Rafael Carrasquillo Mar-tínez, y nos solicita que revoquemos una Resolución emi-tida por el Tribunal de Apelaciones en la cual denegó el recurso de certiorari presentado ante su consideración. En ese recurso, solicitó al foro apelativo intermedio que orde-nara al Tribunal de Primera Instancia a cumplir con el mandato que esta Curia emitió el 17 de noviembre de 2008.([1]) Mediante ese dictamen, revocamos una sentencia dictada por el foro apelativo intermedio y, como consecuen-cia, se dejó sin efecto la sentencia sumaria emitida por el foro de instancia el 22 de octubre de 2007. Posteriormente, *291 ese tribunal determinó mediante Resolución que el man-dato de esta Curia no revocó completamente su dictamen.
Ante el alegado incumplimiento por parte del foro pri-mario, este recurso de certiorari permite expresarnos sobre la doctrina del mandato judicial. En específico, en cuanto a si de acuerdo con esta figura jurídica, el Tribunal de Pri-mera Instancia estaba obligado a acatar nuestra orden y determinación.
En ese contexto, pasemos a delinear los antecedentes fácticos pertinentes al caso de autos.
I
El 28 de mayo de 2004 la Sra. Sonia J. Mejías Franqui presentó ante el Tribunal de Primera Instancia una de-manda sobre liquidación de la Sociedad de Bienes Ganan-ciales surgida entre ella y su excónyuge, el Ledo. Rafael Carrasquillo Martínez. En la vista con antelación al juicio, la representación legal de la señora Mejías indicó que el peticionario no había contestado el interrogatorio suminis-trado, incumpliendo así con la orden del tribunal. El licen-ciado Carrasquillo Martínez no estuvo presente en sala al momento de ser llamado el caso.
En vista de ello, el foro de instancia le impuso una multa de $300 por comparecencia tardía a la vista y por no haber contestado el interrogatorio ni la demanda. Asi-mismo, ordenó a las partes que consiguieran los documen-tos necesarios, contrataran un tasador y trataran de llegar a un acuerdo. Advirtió además que, de ser necesario, elimi-naría las alegaciones que no estuviesen apoyadas en evi-dencia admisible.
En cumplimiento con lo ordenado, el peticionario pre-sentó una lista de legajos que sometería como prueba documental. De igual manera, contestó la demanda e instó una reconvención relacionada con un caso consolidado con el presente. En su escrito, el peticionario reclamó el tras- *292 paso de la titularidad de un terreno sito en Aguas Buenas, que pertenece en dominio al padre de la señora Mejías y en donde la Sociedad de Bienes Gananciales había edificado un potrero. Además, argüyó que el padre de la recurrida había acordado donar el terreno al matrimonio con la con-dición de que se encargaran de su mantenimiento y cons-truyeran en él una estructura para ser utilizada como potrero.
Luego de varias incidencias procesales, en octubre de 2005 el peticionario presentó una moción sobre renuncia de representación legal. Esta solicitud fue concedida bajo el apercibimiento de que presentara una nueva represen-tación legal dentro del término de quince días. Transcu-rrido en exceso el término concedido, el 7 de noviembre de 2006 el tribunal reiteró su orden. Sin embargo, esta orden no se cumplió. En consecuencia, el tribunal impuso al pe-ticionario una multa de $300 y le apercibió que, de incum-plir nuevamente con lo ordenado, eliminaría sus alegaciones.
Posteriormente, luego del continuado incumplimiento por el peticionario, el 17 de febrero de 2007 el foro primario eliminó las alegaciones contenidas en la contestación de la demanda y en la reconvención. En virtud de ello, la señora Mejías presentó una moción de sentencia sumaria. En esta argüyó que, habiéndose eliminado las alegaciones del peti-cionario, no existían controversias genuinas sobre hechos materiales que impidieran que el tribunal dictara senten-cia sin necesidad de celebrar un juicio en sus méritos.
Conforme a esto, el Tribunal de Primera Instancia dictó sentencia en la cual liquidó sumariamente la Sociedad de Bienes Gananciales. Dicho foro, basado en los documentos presentados en la moción de sentencia sumaria, determinó que la Sociedad de Bienes Gananciales estaba constituida de los bienes siguientes:

*293
Activos Valor

Propiedad en Urb. Hermanas Dávila $220,000
Terreno en Trujillo Alto $255,000
Ford Taurus $3,600
Suzuki Vitara $5,660
Cuentas IRAS [sic] Carrasquillo $25,518.67
Cuentas IRAS [sic] Sonia Mejías $25,518.67
Ahorros AEELA Carrasquillo $11,395.52
Ahorros Mejías $300.36
Aportaciones retiro Carrasquillo sujeto a ser corrobo-rado por orden del Tribunal
$25,735.46 Acumulaciones retiro Sonia Mejías
1/3 parte acción Robero Camping, Inc. Valor desconocido
Plan vacional Club Lagoon Valor desconocido
Bienes muebles y enseres del hogar Valor desconocido
Bote Boston Whaler Valor desconocido
El tribunal dividió los activos y pasivos por partes igua-les entre los excónyuges. No obstante, en el inventario, el foro primario no incluyó el potrero que, según constaba en el expediente del caso, se construyó con el dinero ganancial en el terreno del padre de la señora Mejías. Por otro lado, en la liquidación se le concedió un crédito a la señora Me-jías por las deudas pagadas en exceso a su participación, así como por el uso exclusivo por el peticionario de un in-mueble ganancial luego de disuelta la Sociedad Legal de Bienes Gananciales.
Inconforme, el peticionario solicitó la revisión al Tribunal de Apelaciones. Este foro confirmó la sentencia del Tribunal de Primera Instancia. No conteste con esta determi-nación, el peticionario recurrió a este Tribunal para impugnar la determinación del foro apelativo intermedio.
El 17 de noviembre de 2008 emitimos una sentencia me-diante la cual revocamos el dictamen del Tribunal de Ape-laciones y, a su vez, el curso decisorio del foro primario. A esos efectos, expresamos lo siguiente:
*294 [C]oncluimos que el Tribunal de Primera Instancia dictó sentencia sumaria sin contar con la evidencia necesaria para adjudicar la totalidad del caso. Por consiguiente, y al amparo de la regla 50 del Reglamento del Tribunal Supremo de Puerto Rico, expedimos el auto y revocamos la sentencia recurrida, así como la sentencia del Tribunal de Primera Instancia. Se de-vuelve el caso a dicho foro para que reciba prueba en una vista evidenciaría sobre la existencia y el valor de cada uno de los bienes gananciales cuya división se solicita. (Enfasis nuestro).([2])
En atención a ello, el peticionario acudió al foro prima-rio para que celebrara una vista en la que se pudiera pre-sentar evidencia suficiente para establecer el valor de los bienes sujetos a liquidación.
Así las cosas, el 24 de agosto de 2009 el peticionario también solicitó que se le permitiera restituir las alegacio-nes que se le eliminaron. Argüyó que, conforme la Regla 45.3 de Procedimiento Civil de 1979 (32 L.P.R.A. ant. Ap. III), procedía la restitución por haber cumplido con las ór-denes del tribunal y tener disponible su representación legal. Además, sustentó que la restitución de sus alegacio-nes procedía como corolario del debido procedimiento de ley.
El 1 de septiembre de 2009 el Tribunal de Primera Ins-tancia notificó una Orden mediante la cual declaró “no ha lugar” la moción al amparo de la Regla 45.3 de Procedi-miento Civil, supra, presentada por el peticionario. Incon-forme, este solicitó una reconsideración, la cual fue denegada.
Posteriormente, el foro primario celebró una vista evi-denciaría y emitió una Minuta-resolución mediante la cual dispuso, en lo pertinente, que no dejaría sin efecto la sen-tencia dictada sumariamente.([3])
Insatisfecho con tales determinaciones, el 1 de octubre de 2009 el peticionario acudió al Tribunal de Apelaciones *295 mediante un recurso de certiorari. En este argüyó que la sentencia emitida por esta Curia revocó la sentencia dic-tada sumariamente por el foro de instancia el 22 de octu-bre de 2007. Además, indicó que el foro primario no hizo caso de la orden de este Tribunal y que solo pasaría prueba de algunas de las partidas que restaba por determinar so-bre la sociedad ganancial, en lugar de todos los bienes que formaban parte de esta.([4])
Atendido el recurso, el Tribunal de Apelaciones, me-diante Resolución notificada el 11 de junio de 2010, denegó expedir el auto de certiorari. Oportunamente, el licenciado Carrasquillo Martínez presentó una solicitud de reconside-ración, petición que fue declarada “no ha lugar”.
No conteste con esa determinación, el peticionario acude ante este Tribunal mediante un recurso de certiorari y plantea los errores siguientes:
Erró el T.C.A. [sic] al confundir o mal interpretar que el de-mandado Sr. Carrasquillo había renunciado a su representa-ción legal allá para el 2005, según unos documentos (Minuta del 14 de septiembre de 2005 ... aceptando renuncia) corres-pondientes ... al Demandante en dicho caso Diego Mejías, y adjudicárselos [o] adscribírselos al demandado Sr. Carrasqui-llo, por lo que denegó el auto, entendiendo que habían trans-currido (casi 2 años-octubre 2005 hasta febrero 2007) sin cum-plir la orden del T.P.I., por tanto, actuó correctamente al no reinstalarle sus alegaciones.
Erró el T.C.A. [sic] al determinar que el T.P.I. estaba cum-pliendo y actuando con lo dictaminado en la Sentencia dictada por el Ilustre Tribunal Supremo el 17 de noviembre de 2008, a pesar de que se sometió la transcripción de la vista del 14 de septiembre de 2009, así como la Minuta de la misma, en los cuales el T.P.I. expresa que su Sentencia Sumaria dictada el 22 de octubre de 2007, no había sido revocada por el Supremo; y que habría de entrar a ver prueba únicamente sobre los bie-nes mencionados en la Sentencia Sumaria que no tenían valo-res establecidos; y no como indica la sentencia de que: “se re-voca la sentencia recurrida así como la sentencia del T.P.I. y se devuelve el caso al foro para que reciba prueba en una vista *296 evidenciaría sobre la existencia y valor de cada uno de los bie-nes gananciales cuya división se solicita
Cometió error el T.C.A. [sic] al no reconocer como un acto dis-criminatorio del tasador y que lo descalifica al presente, el hecho de haberle cursado a la Parte Demandante las tasacio-nes en septiembre del 2007 (con cuyos documentos la parte sometió moción de sentencia sumaria), y a la Parte Deman-dada se las cursó en noviembre del 2007, luego de dictada la sentencia sumaria el 22 de octubre de 2007, en adición y junto a los demás actos informados al Tribunal, ocurridos previo a depositarse el importe de los honorarios del tasador, allá para julio del 2007, permitiendo ahora que dicho tasador sea quien tase nuevamente las propiedades.
Erró el T.C.A. [sic] al determinar que el T.P.I. actuó correcta-mente imponiéndole únicamente al Demandado sufragar los honorarios del tasador exclusivamente al demandado y no ad-judicárselos a la demandante por ser quien cometió el error de no valorar todos los bienes; y sin exigirle previamente una cotización de los servicios requeridos, como se había hecho la primera vez; así como rechazar la propuesta del demandado de que se escogiera el tasador de entre tres proponentes; y que el T.P.I. determinara valorar la propiedad donde reside el de-mandado como comercial, cuando dicha propiedad nunca ha estado en el mercado de alquiler comercial, ni se ha sometido ni tiene aprobación para ello, estando dedicada a vivienda desde la década del 1950.
Erró el T.C.A. [sic] al no expedir el auto para atender o pro-nunciarse con respecto a la determinación del T.P.I. de no per-mitir tasar otras dos (2) propiedades adicionales (potrero y el terreno donde está situado con las mejoras realizadas), al ha-berse edificado con dinero de la Sociedad de Gananciales tal y como lo dispuso el Supremo en su sentencia del 17 de noviem-bre [de] 2008. (Énfasis nuestro y en el original).![5])
Examinado el recurso, le concedimos un término a los peticionarios para que presentaran sus alegatos. Recibida su comparecencia, el 15 de julio de 2011 ordenamos a la parte recurrida que sometiera su escrito en oposición al recurso y le apercibimos que, de no recibirse su alegato, el caso quedaría sometido sin su comparecencia.
Transcurridos más de ocho meses de notificada esta úl-tima Resolución, los recurridos no han presentado su es- *297 crito en oposición. Por consiguiente, procedemos a resolver la controversia que nos ocupa sin el beneficio de sus alegaciones.
II
A. La Regla 39.2(a) de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. Ill (Supl. 2009)) disponía que:
(a) Si el demandante dejare de cumplir con estas reglas o con cualquier orden del tribunal, el tribunal a iniciativa pro-pia o a solicitud del demandado, podrá decretar la desestima-ción del pleito o de cualquier reclamación contra él, o la elimi-nación de las alegaciones, según corresponda.
Cuando se trate de un primer incumplimiento la severa san-ción de la desestimación de la demanda o la eliminación de las alegaciones, tan sólo procederá después que el tribunal, en primer término, haya apercibido al abogado de la parte de la situación y se le haya concedido oportunidad para responder.
Si el abogado de la parte no respondiese a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente infor-mada y/o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el tribunal po-drá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos que las circuns-tancias del caso justifiquen que se reduzca el término.
De la citada disposición surge que, una vez se plantea ante el tribunal de instancia una situación que amerite la imposición de sanciones, este debe amonestar primera-mente al abogado de la parte. Si la acción disciplinaria no produce frutos positivos, procederá la desestimación de la demanda o la eliminación de las alegaciones, luego de que la parte haya sido debidamente informada y apercibida de las consecuencias que puede acarrear el incumplimiento. Mun. de Arecibo v. Almac. Yakima, 154 D.PR. 217, 222-223 (2001); Dávila v. Hosp. San Miguel, Inc., 117 D.P.R. 807, 814-815 (1986).
*298 Sobre este particular, nos comenta el profesor Hernán-dez Colón que
[e]l propósito de las sanciones puede ser disuasivo, punitivo o remediatorio. Es disuasivo en la medida en que la posibili-dad de la aplicación de la sanción promueve el adecuado des-envolvimiento del proceso al disuadir de la infracción de las reglas. Es punitivo cuando se persigue castigar al infractor y remediatorio cuando lo que busca la sanción es proveer un remedio a la infracción. En ocasiones la sanción es tanto pu-nitiva como remediatoria. (Escolio omitido).([6])
De ordinario, nuestro ordenamiento jurídico favorece el que los casos se ventilen en sus méritos. Rivera et al. v. Superior Pkg., Irte, et al., 132 D.P.R. 115 (1992). Es por ello que, a pesar de que la Regla 39.2 de Procedimiento Civil de 1979, supra, proveía la eliminación de las alegaciones en casos de incumplimiento con las reglas u órdenes del tribunal, esta sanción debe prevalecer únicamente en situaciones extremas en las que sea clara e inequívoca la desatención y el abandono total de la parte con interés. Mun. de Arecibo v. Almac. Yakima, supra.
Como regla general, los tribunales están obligados a desalentar la práctica de falta de diligencia y de incumplimiento con sus órdenes mediante su efectiva, pronta y oportuna intervención. Dávila v. Hosp. San Miguel, Inc., supra. Además, tienen el poder discrecional, según las Reglas de Procedimiento Civil, de desestimar una demanda o eliminar las alegaciones de una parte. No obstante, esa determinación se debe ejercer juiciosa y apropiadamente. Maldonado v. Srio. de Rec. Naturales, 113 D.P.R. 494, 498 (1982).
Establecido el alcance de las disposiciones aplicables, según las Reglas de Procedimiento Civil, concernientes a la imposición de sanciones por incumplimiento de las órdenes *299 del tribunal, pasemos a examinar el marco jurídico que alberga la figura de la sentencia sumaria.
B. La Regla 36 de Procedimiento Civil de 1979 (32 L.P.R.A. ant. Ap. III) preceptuaba lo referente al mecanismo de la sentencia sumaria. El propósito principal de la moción de sentencia sumaria es propiciar la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales. En vista del ánimo dinámico de estas, no ameritan la celebración de un juicio en su fondo, ya que lo único que resta es dirimir una controversia de derecho. Quest Diagnostics v. Mun. San Juan, 175 D.P.R. 994 (2009).
Por su parte, la Regla 36.3 (32 L.P.R.A. ant. Ap. III) dispone que, para dictarse sentencia sumaria, es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, surja que no existe controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, debe dictarse sentencia sumaria a favor de la parte promovente. Ramos Pérez v. Univisión, 178 D.P.R. 200 (2010); González Aristud v. Hosp. Pavía, 168 D.P.R. 127 (2006); Luán Invest. Corp. v. Rexach Const. Co., 152 D.P.R. 652 (2000).
Solo procede dictar sentencia sumaria cuando surge claramente que el promovido no puede prevalecer y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1986). Cuando no existe una clara certeza sobre todos los hechos materiales en la controversia, no procede una sentencia sumaria. Id.
En el pasado, hemos dispuesto que un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Ramos Pérez v. Univisión, supra, pág. 213, citando a J.A. *300 Cuevas Segarra, Tratado de derecho procesal civil, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609. La Regla 36.1 de Procedimiento Civil de 2009 se refiere a estos hechos como “esenciales y pertinentes ...”. 32 L.P.R.A. Ap. V.
“[C]ualquier duda no es suficiente para derrotar una moción de sentencia sumaria. Tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes”. (Enfasis suprimido). Ramos Pérez v. Univisión, supra, pág. 214. Toda inferencia que se haga de los hechos incontrovertidos debe hacerse de la manera más favorable a la parte que se opone a esta. Consejo Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538 (1991); Corp. Presiding. Bishop CJC of LDS v. Purcell, supra.
Al evaluar una moción de sentencia sumaria, los jueces no están limitados por los hechos o documentos que se aduzcan en la solicitud, sino que deben considerar todos los documentos en autos —sean o no parte de la solicitud de sentencia sumaria— de los cuales surjan admisiones hechas por las partes. Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990).
La sentencia sumaria “vela adecuadamente por el balance entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los liti-gios civiles”. Ramos Pérez v. Univisión, supra, pág. 220. Ahora bien, “ ‘[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de su ‘día en corte’, principio elemental del debido proceso de ley’ ”. Mgmt. Adm. Servs. Corp. v. E.L.A., 152 D.P.R. 599, 611 (2000).
Analizados los preceptos reconocidos en relación con la moción de sentencia sumaria, pasemos a discutir la aplica-ción de la doctrina del mandato judicial.
C. El mandato se ha definido como una “[o]rden de un tribunal superior a uno de inferior jerar- *301 quia, notificándole haber revisado el caso en apelación y enviándole los términos de su sentencia”. I. Rivera García, Diccionario de términos jurídicos, 2da ed. rev., New Hampshire, Ed. Equity Publishing Corporation, 1989, pág. 162.
En síntesis, el mandato es el medio oficial que posee un tribunal apelativo para comunicar a un tribunal inferior la disposición de la sentencia objeto de revisión y para ordenarle el cumplimiento de lo acordado. Pueblo v. Tribunal de Distrito, 97 D.P.R. 241, 247 (1969). “El propósito principal del mandato es lograr que el tribunal inferior actúe en forma consistente con los pronunciamientos [del tribunal apelativo]”. Id.
De la misma forma, una vez el Secretario del Tribunal remite el mandato, el caso que estaba ante la consideración de dicho foro finaliza para todos los efectos. Así pues, el tribunal inferior adquiere la facultad de continuar con los procedimientos, según lo que haya dictaminado el tribunal apelativo. Pérez, Ex parte v. Depto. de la Familia, 147 D.P.R. 556, 571 (1999). Una vez el mandato es remitido al tribunal inferior, este readquiere jurisdicción sobre el caso a los únicos fines de ejecutar la sentencia, tal como fue emitida en apelación, y el tribunal apelativo pierde la suya. Pueblo v. Rivera, 75 D.P.R. 432, 433 (1953).
De ahí la acuñada frase generalmente incorporada en las sentencias de este Tribunal: “Se devuelve el caso al tribunal de instancia para la continuación de ulteriores procedimientos no inconsistentes [con lo aquí resuelto]”. Véase Pueblo v. Tribunal de Distrito, supra, pág. 247.
Cónsono con lo antes esbozado, en el ámbito federal, el dictamen emitido por un tribunal de mayor jerarquía y en-viado a uno de inferior jerarquía no da base a sugerencias o flexibilidad en cuanto a la orden a seguir, por lo que esta es rígida y definitiva. En cuanto a este particular, el trata-dista James Moore nos comenta:
Appellate courts often remand a case to the lower federal *302 courts for further proceedings. It is often stated that the decision of an appellate court on an issue of law becomes the law of the case on remand. This is the almost universal language describing the law determined by the mandate. Although this terminology has been widely adopted, the Supreme Court has noted that the mandate rule is not, strictly speaking, a matter of law of the case. The nondiscretionary aspect of the law of the case doctrine is sometimes called the “mandate rule” and this terminology is more precise than the phrase “law of the case.” On remand, the doctrine of the law of the case is rigid; the district court owes obedience to the mandate of the Supreme Court or the court of appeals and, must carry the mandate into effect according to its terms. (Enfasis nuestro y esco-lios omitidos). 18 Moore’s Federal Practice 3d Sec. 134.23(l)(a), págs. 134-58 a 134-59 (2001).
Como corolario de la doctrina, los tribunales apelativos federales han interpretado lo siguiente:
Under the mandate rule, a lower court generally may not consider questions that the mandate has laid to rest. ...
The mandate rule does not simply preclude a district court from doing what an appellate court has expressly forbidden it from doing. Under the mandate rule, a district court cannot reconsider issues the parties failed to raise on appeal; the court must attempt to implement the spirit of the mandate; and the court may not alter rulings impliedly made by the appellate court. South Atlantic Ltd. Partnership v. Riese, 356 F.3d 576, 583-584 (4to Cir. 2004).
Por otro lado, una vez remitido un mandato al tribunal inferior, el efecto de dicho auto alcanza aun aquellas cuestiones que, si bien no se litigaron, pudieron haber sido litigadas y no lo fueron. Pan American v. Tribunal Superior, 97 D.P.R. 447, 451 (1969). Sin embargo, la doctrina establece que si bien es cierto que los tribunales de menor jerarquía le deben obediencia y fiel cumplimiento al mandato judicial de un tribunal de mayor rango, estos mantienen discreción para reconsiderar asuntos que no fueron expresamente o implícitamente decididos por el tribunal que emitió la orden de mandato. Moore’s, supra, Sec. 134.23(4), pág. 134-61.
*303 Lo anterior no debe interpretarse como un cheque en blanco para que los tribunales inferiores actúen fuera de la orden dictada. Por ello, se debe entender que son solo aque-llos asuntos que son ajenos al mandato judicial los que el foro inferior podrá revisar, a saber, aquellos asuntos que no surgen de manera explícita o implícita. En cuanto a los asuntos explícitos, se entenderá que son los que surgen de la sentencia claramente y sin espacio a ambivalencias. Sin embargo, los asuntos implícitos son los que establece el caso Pan American v. Tribunal Superior, supra es decir, aquellas cuestiones que, si bien no se litigaron, pudieron haberse litigado, aquellas que bien surgen del mandato mismo, así como aquellas que se deben realizar para que resulte efecto el mandato.
Establecido el marco doctrinal a la luz de estos princi-pios, pasemos a considerar los señalamientos de error con-tenidos en el recurso ante nos.
III
En el caso que nos ocupa, este Tribunal se pronunció en cuanto al derecho aplicable a la determinación del foro pri-mario de resolver el caso mediante sentencia sumaria. En específico, sostuvimos que ese no era el vehículo procesal adecuado para disponer del recurso, ya que ese foro no te-nía ante sí el valor real de los bienes sujetos a liquidación.
En aras de ilustrar con claridad lo resuelto en la senten-cia emitida por esta Curia el 17 de noviembre de 2008, procedemos a citarla in extenso:
En el presente caso, el Tribunal de Primera instancia tomó la acertada determinación de eliminar las alegaciones del pe-ticionario, como medida disciplinaria, ante su craso incumpli-miento con las órdenes emitidas. El patrón de craso incumpli-miento constituye causa suficiente para imponer la drástica sanción de eliminar las alegaciones del peticionario. Por tanto se sostiene la determinación del foro primario a esos efectos.
Del trámite procesal antes relatado surge que luego de con- *304 cedida la renuncia de su representante legal, el peticionario demoró más de un año en anunciar la nueva representación legal. En octubre de 2005, el Tribunal le concedió (15) días para que gestionara e informara quién asumiría su representación. Pasado en exceso dicho término se le impuso una sanción económica de $300 y se le apercibió de la posibi-lidad de que se eliminaran sus alegaciones si incumplía con lo ordenado. Llegado el 14 de febrero de 2007 sin que el peticio-nario cumpliera la orden, el tribunal procedió a eliminar las alegaciones del peticionario.
Sin embargo, la eliminación de las alegaciones no conlleva, de por sí, la inexistencia de controversias de hechos que justi-fica el que no se celebre una vista evidenciaría. Hemos dis-puesto reiteradamente que el proceso de formar consciencia judicial exige que se compruebe cualquier aseveración mediante prueba y, para ello, el tribunal deberá celebrar las vistas que crea necesarias y adecuadas. Continental Ins. Co. v. Isleta Marina, 106 D.P.R. 809 (1978).
El expediente revela que cuando el Tribunal de Primera Ins-tancia dictó sentencia sumaria no tenía ante sí toda la prueba necesaria para establecer de manera concluyente los derechos de cada una de las partes sobre los bienes gananciales y poder adjudicar finalmente la totalidad de las controversias suscita-das en el caso. A pesar que durante la vista con antelación al juicio las partes mencionaron la existencia de una estructura construida con dinero ganancial en terreno del padre de la señora Mejías, cuya tasación fue judicialmente ordenada, nada se dispuso en la solicitud ni en la sentencia sumaria sobre el crédito que le pertenece a la sociedad legal de ganan-ciales por la construcción de dicha estructura.
Asimismo, el foro primario dividió y liquidó, en ausencia de prueba, las participaciones que la sociedad legal de ganancia-les poseía sobre la corporación Roberto Camping, Inc. Del ex-pediente surge que existe una controversia en cuanto a si el peticionario, a través de la sociedad legal de gananciales, se obligó a adquirir las participaciones de su suegro en esa corporación. Por esa razón, al momento de dictarse la senten-cia sumaria se desconocía el por ciento de participación y el valor de las acciones que poseía la sociedad de gananciales sobre la referida corporación.
Igualmente, la sentencia sumaria fue decretada en descono-cimiento de la cuantía que aportó la sociedad legal de ganan-ciales, al plan de retiro del peticionario. En cuanto a dicho asunto, el tribunal ordenó que el sistema de retiro proveyera la información sobre las aportaciones que éste había acumulado. Sin embargo, al momento de dictarse la sentencia *305 sumaria aún no se había provisto la información.
Finalmente, el foro primario dividió un plan vacacional, el mobiliario de la casa y un bote sin tener inventario ni avalúo de los mismos. La señora Mejías, aunque hizo mención de ellos, no acompañó prueba en la solicitud de sentencia suma-ria que sustentara la existencia y el valor de los referidos bienes. Es decir, el Tribunal asumió como un hecho su existen-cia y dejó al arbitrio de las partes estimar su justo valor.

En vista de lo anteriormente expuesto, concluimos que el Tribunal de Primera Instancia dictó sentencia sumaria sin contar con la evidencia necesaria para adjudicar la totalidad del caso. Por consiguiente, y al amparo de la Regla 50 del Regla-mento del Tribunal Supremo de Puerto Rico, expedimos el auto y revocamos la sentencia recurrida, así como la sentencia del Tribunal de Primera Instancia. Se devuelve el caso a dicho foro para que reciba prueba en una vista evidenciaría sobre la exis-tencia y valor de cada uno de los bienes gananciales cuya división se solicita.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal, interina. (Enfasis nuestro). Sentencia de 17 de noviembre de 2008, Diego Mejías Montalvo v. Rafael Carrasquillo Martínez, CC-2008-463, págs. 8-11.
Al evaluar la determinación de este Tribunal a la luz de la doctrina del mandato, es forzoso concluir que el Tribunal de Primera Instancia no poseía la autoridad para decidir que la sentencia emitida por este Foro no revocaba comple-tamente la sentencia dictada sumariamente por el foro primario. El foro de instancia estaba obligado a seguir el pronunciamiento de este Tribunal y proseguir con los pro-cedimientos como si la referida sentencia emitida sumaria-mente no hubiese existido.
En vista de lo anterior, corresponde al foro primario ce-lebrar una vista evidenciaría en la cual se desfile prueba de todos los bienes sujetos a liquidación, incluso aquellos que no fueron incluidos en la sentencia sumaria que emi-tiera ese tribunal el 22 de octubre de 2007.
En el caso ante nuestra consideración no procedía que se dictara sentencia sumaria a base de las alegaciones es-bozadas en la demanda original, por lo que erró el foro de instancia en su apreciación de que esta solo fue revocada *306 parcialmente. De un examen de las alegaciones de la de-manda resulta claro que estas son insuficientes para poner en condiciones al juzgador de dictar sentencia a partir de estas.
Como es fácil de estimar, a base de dichas alegaciones no es posible conocer de qué bienes específicos se trata; si estos efectivamente pertenecen al patrimonio ganancial cuya división se solicita o si el valor real de estos, entre otros factores. Tales datos, indudablemente, son impres-cindibles para colocar al juzgador en posición de adjudicar y liquidar la Sociedad Legal de Bienes Gananciales correctamente.
Como señalamos anteriormente, el hecho de que las ale-gaciones del peticionario hayan sido eliminadas no es óbice para que este, por medio de una vista evidenciaría, pueda probar la veracidad de sus aseveraciones en aras de resolver las controversias de hechos que aún persisten en el caso de autos. Resolver lo contrario prolongaría este ya tan sonado “Bolero de Ravel”, que tiene como melodía la de nunca acabar.
> I — i
En cuanto al resto de los errores planteados en el re-curso de certiorari antes descrito, en relación con las deter-minaciones del juzgador de instancia en el ejercicio de su discreción para el manejo del caso, resolvemos que al Tribunal de Apelaciones le asiste la razón al no atender dichos señalamientos. Compartimos el criterio de que se trata de determinaciones del foro primario que merecen nuestra deferencia.
La deferencia al juicio y a la discreción del foro senten-ciador está fundamentada en el principio de que los foros apelativos no pueden pretender conducir ni manejar el trá-mite ordinario de los casos que se ventilan ante el Tribunal de Primera Instancia. Como es harto sabido, dicho foro es *307 el que mejor conoce las particularidades del caso y quien está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar y así llegar even-tualmente a una disposición final.
Al analizar la información ante su consideración, el foro primario entendió que no procedía la descualificación del tasador por meras alegaciones del peticionario. Más aún cuando estas ya fueron planteadas anteriormente me-diante un recurso de certiorari ante otro Panel del Tribunal de Apelaciones, el cual fue desestimado.
V
Por los fundamentos enunciados, se revoca parcialmente la Resolución dictada por el Tribunal de Apelaciones el 8 de junio de 2010, mediante la cual no se expidió el auto para atender la determinación del foro primario. En consecuen-cia, se ordena la devolución del caso de autos al Tribunal de Primera Instancia para que reciba la prueba en una vista evidenciaría conforme a lo aquí establecido.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez concurrieron sin opinión escrita.

(1) Diego Mejías Montalvo v. Rafael Carrasquillo Martínez, CC-2008-463, resuelto el 17 de noviembre de 2008.

(2) Véase Apéndice de la Solicitud de certiorari, pág. 157.

(3) íd., pág. 33.

(4) Transcripción de Vista de 4 de septiembre de 2010, Apéndice de la Solicitud de certiorari, pág. 87.

(5) Solicitud de certiorari, págs. 7-8.

(6) R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 4ta ed., San Juan, Ed. LexisNexis de Puerto Rico, 2007, pág. 181.