Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| WILFREDO VEGA VILLANUEVA<br><br>Demandante Apelante<br><br>v.<br><br>AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO<br><br>Demandada Apelada | KLAN202400712 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Civil Núm.: AG2023CV00358<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Candelaria Rosa, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de octubre de 2024.

Comparece el señor Wilfredo Vega Villanueva (señor Vega Villanueva o apelante) mediante recurso de apelación, y por derecho propio, y solicita que revoquemos la *Sentencia Sumaria* del Tribunal de Primera Instancia, Sala Superior de Aguadilla, emitida el 29 de abril de 2024. En dicho dictamen, se desestimó sumariamente la demanda contra la Autoridad de Acueductos y Alcantarillados (AAA o apelada) por no justificarse la concesión de un remedio. Por los fundamentos que expresaremos, confirmamos la *Sentencia Sumaria* recurrida.

En síntesis, el caso de epígrafe trata de una demanda de daños y perjuicios contra la AAA. Según el expediente, la esposa del apelante, la señora Janette González Fantauzzi (señora González Fantauzzi) es abonada de la AAA bajo la cuenta 21690531, a la cual el señor Vega

Villanueva es usuario y está autorizado a hacer gestiones. El 3 de julio de 2018, un empleado de la AAA encontró un niple instalado en la caja donde debía estar el contador que da servicio a la residencia del apelante. Luego de removerse el niple y cerrar la llave de paso, la AAA notificó mediante carta a la señora González Fantauzzi sobre la violación al Reglamento Sobre el Uso de los Servicios de Acueducto y Alcantarillado Sanitario de Puerto Rico, Reglamento Núm. 8901 del 27 de enero de 2017, la multa de mil ($1,000.00) dólares por dicha violación y sobre el proceso de revisión.

Debido a lo anterior, el señor Vega Villanueva formalizó el Acuerdo de Plan de Pago (Acuerdo Núm. 1), en la cual se dispuso que (1) el cliente reconoce que el incumplimiento con solo uno de los plazos tendría como consecuencia que la AAA proceda a cancelar dicho acuerdo y que el balance de la deuda se entiende vencida de inmediato; (2) la AAA podrá suspender el servicio de no pagarse la totalidad de la deuda; y (3) la abonada tendrá que seguir pagando cada una de las facturas que emita la AAA por la prestación de los servicios rendidos. No obstante, el 11 de junio de 2018 el señor Vega Villamil y la señora González Fantauzzi presentaron objeción al importe de la multa impuesta, la cual terminó con la *Resolución Final* de la Secretaría de Vistas Administrativas con la determinación de que la multa es válida y que se cumplieron con las garantías de la *Ley de Procedimiento Administrativo Uniforme*, Ley Núm. 38-2017 (3 LPRA sec. 9601 *et seq.*). Tal dictamen fue luego confirmado por el Tribunal de Apelaciones y posteriormente el Tribunal Supremo denegó la solicitud de *certiorari* de la señora González Fantauzzi. Mientras se dilucidaba este proceso, la señora Gonzalez Fantauzzi recibió una factura de

novecientos setenta y seis dólares con veintiocho centavos ($976.28) y en la cual se indicó que unos ochocientos treinta y nueve dólares con sesenta y ocho centavos ($839.68) estaban siendo objetados.

Durante y posterior la objeción antes referida, la AAA emitió varias facturas—cual incluían en el balance el Ajuste del Plan Fiscal, identificada claramente, y la multa administrativa—entre el 2018 y el 2023 y, al encontrar varias veces dentro de este término que el señor Vega Villanueva y la señora González Fantauzzi adeudaban cierta cantidad de dinero, la AAA notificó a estas partes su intención de suspenderle el servicio por falta de pago y, ante la falta de respuesta u objeción, así mismo lo hizo cada vez. Eventualmente, el 3 de mayo de 2022 se formalizó un Acuerdo de Plan de Pago (Acuerdo Núm. 2) para saldar la deuda de mil sesenta dólares con cincuenta y tres centavos ($1,060.53). Igual que el Acuerdo Núm. 1, el Acuerdo Núm. 2 incluía advertencias sobre las consecuencias de incumplir con solo uno de los plazos o no pagar la deuda en su totalidad, y sobre la obligación de continuar pagando las facturas que emita la AAA. A pesar de lo acordado, el señor Vega Villanueva y la señora González Fantauzzi incumplieron en pagar en los plazos correspondientes, por lo cual la AAA canceló el Acuerdo Núm. 2, notificó sobre lo ocurrido, indicó el balance adeudado y eventualmente, como en ocasiones anteriores, suspendió el servicio.

Por todo lo ocurrido, el señor Vega Villanueva presentó una demanda de daños y perjuicios contra la AAA, aludiendo a que la apelada violó el Reglamento Núm. 8901 y otros estatutos y solicitó que le ordenara a la apelada que pagara trecientos mil ($300,000.00) dólares por los alegados daños ocasionados. Luego de varios trámites

procesales que no vienen al caso, la AAA solicitó que se emitiera sentencia sumaria a la cual el señor Vega Villanueva se opuso sin alegar o presentar hechos que estuvieren todavía en controversia o que fueran significativos al caso. Luego de evaluada la moción de reconsideración del señor Vega Villanueva y la oposición de la AAA, el foro primario declaró sin lugar a la solicitud.

Insatisfecho, el apelante recurre ante este Tribunal y alega que el foro primario erró (1) al dictar a favor de la apelada a pesar de dicha apelada confirmar la existencia de controversias sustanciales de hechos meses antes de emitirse la *Sentencia Sumaria*; (2) al determinar que el apelante había realizado una toma clandestina; (3) al no atender en sus méritos las violaciones al Código Penal, 33 LPRA sec. 5001 *et seq.*, cometidas por la parte apelada al presentar un documento público alterado para que fuera archivado en autos en el foro apelativo en el caso anterior; (4) al señalar como alegadas admisiones del apelante que fue a sabiendas y a propósito que este dejó de pagar los cargos correspondientes al ajuste del plan fiscal; (5) al no considerar si el caso era meritorio determinar que envolvía cuestiones de interés público; (6) al presentar después de haber dictado *Sentencia Sumaria* el Artículo 10.03 del Reglamento Núm. 8901 para argumentar a favor de la apelada que el Código Sobre Tomas o Descargas Clandestinas, Hurto de Agua, Manipulación de Contadores u Otros Accesorios Propiedad de la Autoridad de Acueductos y Alcantarillados, Reglamento Núm. 5129 de 13 de octubre de 1994, había sido derogado.

En su oposición, la AAA argumenta que el foro primario actuó correctamente ya que (1) la admisión de la existencia de controversia meses antes que se emitiera la Sentencia Sumaria se basó en una

moción y al amparo de una Regla de Procedimiento Civil distinta; (2) el apelante no demostró que existían hechos todavía en controversia; (3) la AAA cumplió con lo dispuesto en el Reglamento Núm. 8901; (4) el apelante nunca utilizó los medios de objeción o remedio administrativo en cuanto a las facturas que la AAA emitía; (4) el señor Vega Villanueva no controvirtió hechos como la notificaciones que la AAA emitió sobre el balance adeudado y su intención de suspender el servicio; (5) la presente controversia no involucra la doctrina del interés público; (5) estamos ante un caso civil, no criminal; y (6) por la AAA no haber actuado de manera culposa o negligente, no hay un remedio que se le pueda conceder al apelante.

Vale recordar que el mecanismo procesal de la sentencia sumaria se rige por la Regla 36 de *Procedimiento Civil* y tiene como finalidad la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales. Véase Regla 36 de Procedimiento Civil de 2009 (32 LPRA Ap. V); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023) (citando a *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964 (2022)). Así, la Regla 36.2 permite que cualquiera de las partes pueda solicitar que se dicte sentencia sumaria sobre la totalidad o sobre cualquier parte de una reclamación. Regla 36.2 de Procedimiento Civil, *supra*. Véase, también, *Torres Pagán et al. v. Mun. de Ponce,* 191 DPR 583 (2014). A su vez, se ha establecido que el peticionario debe establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, es decir, suficiente para que sea necesario dirimirlo en un juicio plenario. Regla 36.1 de Procedimiento Civil, *supra*; *Oriental Bank v. Caballero García*, 212 DPR 671 (2023)

(citando a *Mun. de Añasco v. ASES et al.*, 188 DPR 307 (2013)). Véase, también, *Ramos Pérez v. Univisión,* 178 DPR 200 (2010) (citando a *Luan Invest. Corp. v. Rexach Const. Co.*, 152 DPR 652 (2000)).

Asimismo, la Regla 36 regula la oposición a que se dicte sentencia sumaria, la cual debe citar específicamente los párrafos enumerados que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. Regla 36.3(b)(2) de Procedimiento Civil de 2009, *supra*. Como se puede apreciar, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones. *Roldán Flores v. M. Cuebas et al*., 199 DPR 664 (2018) (citando a *Rodríguez Méndez et al. v. Laser Eye*, 195 DPR 769 (2016); *Ramos Pérez v. Univisión, supra*). En la medida en que meras afirmaciones no bastan para derrotar una solicitud de sentencia sumaria, la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados. Íd.; *Ramos Pérez v. Univisión*, *supra*.

En cuanto al estándar de revisión aplicable, el Tribunal de Apelaciones utilizará los mismos criterios que el foro de primera instancia al determinar la correspondencia de la sentencia sumaria, aunque limitado a considerar aquellos documentos presentados en el foro primario y obligado a cumplir con la Regla 36.4 de *Procedimiento Civil*. Regla 36.4 de Procedimiento Civil, *supra*. Debemos, por tanto, examinar *de novo* el expediente y verificar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma; luego, revisar si en realidad existen hechos materiales en

controversia y, de encontrar que los hechos materiales realmente están incontrovertidos, revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100 (2015).

De manera aclaratoria, la Regla 10.3 de Procedimiento Civil, *supra*, regula el procedimiento relacionado con la solicitud para que se dicte sentencia por las alegaciones. *W.M.M., P.F.M. et al. v. Colegio et al.*, 211 DPR 871 (2023). Esta regla dispone que, si en dicha moción se exponen materias no contenidas en dichas alegaciones y estas no son excluidas por el tribunal, la misma deberá considerarse como una solicitud de sentencia sumaria. Regla 10.3 de Procedimiento Civil, *supra*. Por ello, este mecanismo procede después de que se haya contestado la demanda y cuando de las alegaciones surja que no existe controversia sustancial de hechos, por lo que es innecesaria la celebración de un juicio en su fondo, por lo cual será suficiente que el tribunal se suplemente mediante los documentos anejados a las alegaciones y los hechos susceptibles de conocimiento judicial. *W.M.M., P.F.M. et al. v. Colegio et al.*, *supra* (citando a *Montañez v. Hosp. Metropolitano*, 157 DPR 96 (2002); *PAC v. ELA I et al.*, 150 DPR 359 (2000); J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2.ª ed., San Juan, Pubs. JTS, 2011, T. II, pág. 544).

Sin embargo, la moción al amparo de la Regla 10.3 "no es el método más apropiado para determinar la suficiencia de las defensas y reconvenciones". *Montañez v. Hosp. Metropolitano*, *supra*. Ello responde a que, ante una solicitud de sentencia por las alegaciones, el tribunal debe examinar las alegaciones de la demanda liberalmente y de la manera más favorable al demandante. Íd. Así, únicamente se

desestimará la acción instada si el promovente no tiene derecho a remedio alguno bajo cualquier hecho que se pueda probar en juicio. Íd.

Por otro lado, nuestro ordenamiento aconseja contra la resolución sumaria de casos complejos o que envuelvan cuestiones de interés público, ya que tales litigios presentan una dificultad en reunir la verdad de los hechos mediante afidávits, deposiciones o declaraciones juradas. *Vera v. Dr. Bravo*, 161 DPR 308 (2004); *Jusino et als. v. Walgreens*, 155 DPR 560 (2001). Tales casos de interés público involucran aquellos asuntos que le competen a la sociedad en general y que se efectúa en busca de su bienestar. L.A. Vega Berríos, *El requisito de caso o controversia y la doctrina de legitimación activa como límites al acceso a la justicia*, 86 Rev. Jur. UPR 1029 (2017).

Ahora bien, el Reglamento Núm. 8901—que es el reglamento más reciente de la AAA que atiende los asuntos de tomas clandestinas y multas administrativas, entre otros temas—dispone que un niple es un artefacto que se utiliza en lugar del contador para conectar ilegalmente la línea de acueducto de la AAA con la línea privada del cliente o usuario. Reglamento Núm. 8901, *supra*, pág. 5. Además, el mismo explica que una toma clandestina es la conexión ilegal al sistema de acueducto o alcantarillado sanitario de la AAA, cual incluye la reconexión no autorizada de un servicio suspendido o descontinuado. Íd., pág. 7. Asimismo, se consideran como hurto de agua las tomas clandestinas mediante la instalación de un niple para facilitar la entrada de agua a una propiedad que no tiene servicio registrado o para que no se registre la totalidad del consumo en un servicio registrado. Íd., pág. 31. A esos efectos, toda toma clandestina está prohibida en los sistemas de la AAA y una violación de tal disposición será causa suficiente para

la desconexión de dicha toma. Íd. Este último Artículo, ni otros, establecen un término para suspender el servicio de acueducto o alcantarillado sanitario luego de la AAA conocer de la toma clandestina.

A la luz de lo anterior, toda persona que viole las leyes que administra la AAA o los reglamentos promulgados por la misma, será penalizada con multas administrativas que no serán menor de doscientos cincuenta ($250.00) dólares ni excederán de cinco mil ($5,000.00) dólares por cada violación, a menos que la ley o reglamento establezca una penalidad mayor. Íd., pág. 36. Además, la referida persona será responsable del pago por servicios recibidos y no facturados, y los pagos administrativos incurridos y el incremento en depósito o fianza según aplique. Íd. Tales multas podrán estar basados en, por ejemplo, (1) los servicios para los cuales incurrió en violación; (2) intervención de la AAA para detener la violación; (3) servicio de acueducto o de alcantarillado sanitario usado sin facturar; y (4) severidad de la manipulación al contador o medidor de flujo, el tipo de conexión ilegal o ilícita. Íd., pág. 37.

La notificación de la multa administrativa se hará por escrito a la persona y dispondrá (1) la determinación de imponerle la multa; (2) la actividad ilícita; (3) la dirección física donde ocurrió la violación; (4) la disposición del Reglamento Núm. 8901 aplicable; y (5) el desglose de la cuantía impuesta. Íd., pág. 39. Además, (1) alertará a la persona de su derecho a solicitar una revisión de tal determinación; (2) el funcionario ante el cual deberá solicitarla; (3) el lugar donde deberá solicitarla; (4) el término de diez (10) días desde recibir la notificación para solicitarla; y (5) las consecuencias en caso de que no solicite la

misma. Íd. De solicitarse una revisión administrativa y recibir una determinación adversa dentro de los veinte (20) días laborables a partir de la fecha de la solicitud, la persona afectada podrá solicitar una vista administrativa dentro de los diez (10) días calendarios siguientes a la fecha de envío de la notificación de la determinación. Íd., págs. 39-40. Si no se solicita una revisión, la persona deberá pagar lo adeudado dentro de un término de diez (10) días a partir de que el proceso de imponer la multa administrativa advenga final y firme, o la AAA podrá debitar los mismos a cualquier servicio registrado del cliente, suspender el servicio en caso de la persona afectada no satisfacer el pago y activar cualquier procedimiento para gestionar el cobro. Íd., pág. 40.

En cuanto a las responsabilidades de la AAA, esta emitirá facturas por los servicios suministrados en la cual indicará la fecha de vencimiento. Íd., pág. 13. De la factura no haber sido objetada debidamente luego de la fecha de vencimiento, la AAA deberá notificar y podrá suspender el servicio por falta de pago. Íd. Tal notificación se constituirá mediante el aviso de cargos vencidos en la próxima factura. Íd. Dentro de estas circunstancias, la AAA podrá negarse a proveer los servicios de acueducto o alcantarillado sanitario, o de ambos, si el solicitante le adeuda por servicios suministrados previamente, por deudas finales, líquidas y exigibles, o por el solicitante no cumplir con los requisitos para establecer o mantener un servicio registrado. Íd.

Concierne la objeción a la factura, la *Ley para Establecer Requisitos Procesales Mínimos para la Suspensión de Servicios Públicos Esenciales* dispone, en lo pertinente, que (1) a partir del envío de la factura por servicios esenciales, el abonado tendrá veinte (20) días para pagar u objetar y solicitar una investigación de la misma ante un

funcionario local; (2) el abonado tendrá diez (10) días a partir de la notificación del resultado adverso para pagar la factura u objetar la solicitud la decisión ante un funcionario del distrito o de la región, quien tendrá veinte (20) días a partir de la fecha de objeción para resolver tal solicitud; (3) la decisión del funcionario de distrito o de la región se le notificará por escrito al abonado, quien tendrá diez (10) días a partir de la notificación para pagar o solicitar una revisión de esa decisión, de ser adversa, y vista ante el director ejecutivo de la autoridad concernida; (4) la instrumentalidad no podrá suspender los servicios mientras se dilucidan los procedimientos descritos; (5) de resolverse en contra del abonado, este deberá pagar el balance de la deuda dentro de un plazo de veinte (20) días a partir de la notificación de la decisión; (7) la instrumentalidad podrá establecer un plan de pago de la deuda y suspender, desconectar o dar de baja el servicio del abonado incumplir con el referido plan; y (8) el abonado tendrá veinte (20) días a partir de la notificación de la decisión del examinador o árbitro para recurrir en revisión al Tribunal de Primera Instancia. Art. 3 de la Ley Núm. 33 de 27 de junio de 1985 (27 LPRA sec. 262b).

Por último, el Código Civil de 2020 obliga a cualquier persona reparar el daño que causó por culpa o negligencia. Art. 1536 del Código Civil de 2020, 31 LPRA sec. 10801. De la parte perjudicada reclamar resarcimiento por los daños sufridos, esta deberá establecer (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado; y (3) el acto u omisión cual tiene que ser culposo o negligente. *Pérez et al. v. Lares Medical et al.*, 207 DPR 965 (2021) (citando a *López v. Porrata Doria*, 169 DPR 135 (2006)).

En este caso, el Tribunal de Primera Instancia actuó correctamente al resolver y desestimar la demanda contra la parte apelada. Según aparece en el expediente, la AAA emitió facturas en las cuales se podía claramente ver que cierta cantidad del balance adeudado era por el Ajuste del Plan Fiscal. Igualmente, en una factura se indicó que una cantidad específica del balance fue objetada, por lo cual se puede fácilmente inferir que se refería a la objeción instada contra la multa de mil ($1,000.00) dólares. Más aun, la AAA demostró que envió notificaciones al señor Vega Villanueva y a la señora González Fantauzzi sobre, supuestamente, el balance adeudado y sobre la posibilidad de suspender el servicio, una alegación que el apelante nunca refutó mediante prueba documental. A esos efectos, la AAA actuó al amparo del Reglamento Núm. 8901 y la Ley Núm. 33 de 27 de junio de 1985, por lo cual cualquier daño sufrido por el señor Vega Villanueva no está relacionado con la controversia pendiente. Por tanto, al no encontrarse ninguna actuación incorrectamente o ilegal de parte de la AAA, concluimos que el foro primario no abusó de su discreción al desestimar sumariamente la demanda.

Por los fundamentos que expresamos, confirmamos la *Sentencia Sumaria* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones