ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| WEST COAST DEVELOPMENT CORPORATION<br><br>Apelante<br><br>v.<br><br>CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES Y OTROS<br><br>Apelada | **KLAN202500425** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2023CV07714<br><br>Sobre: Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de julio de 2025.

Comparece ante este foro West Coast Development Corporation (West Coast o "el apelante") y nos solicita que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, notificada el 11 de abril de 2025. Mediante el referido dictamen, el foro primario declaró que el Centro de Recaudación de Ingresos Municipales (CRIM) tenía autoridad para cobrarle a West Coast el pago de contribuciones por el inmueble donde alberga el Centro Judicial de Mayagüez.

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

### I.

El 8 de febrero de 2024, West Coast presentó una *Demanda Enmendada sobre Sentencia Declaratoria* en contra del CRIM, el Sr. Reinaldo Paniagua Látimer, en su carácter oficial de Director Ejecutivo del CRIM, la Oficina de Administración de Tribunales (OAT) y el Hon.

Sigfrido Steidel Figueroa, en su carácter oficial como Director Administrativo de los Tribunales (en conjunto, "parte apelada").[1] Alegó que, el 4 de noviembre de 2002, el apelante y la OAT suscribieron un acuerdo titulado *Contrato de Arrendamiento Centro Judicial de Mayagüez* ("el Contrato") al amparo de la Ley Núm. 345 del 2 de septiembre de 2000, 4 LPRA sec. 24j (Ley Núm. 345-2000). Sostuvo que, mediante el referido acuerdo, la OAT adquirió la facilidad donde ubica el Centro Judicial de Mayagüez ("la Propiedad") para efectos del Artículo 1(c) de dicha ley. Por lo cual, planteó que la Propiedad adquirida estaba exenta del pago de contribuciones.

No obstante, West Coast indicó que según el Estado de Cuenta del 2 de agosto de 2023 del CRIM, alegadamente adeudaba un total de $4,039,344.00 por concepto de contribuciones sobre la propiedad objeto del Contrato. Por tanto, solicitó que se emitiera una sentencia declaratoria, en la cual resolviera que la Propiedad estaba exenta del pago de contribuciones por disposición expresa de la Ley Núm. 345-2000.

El 12 de abril de 2024, la OAT presentó su *Contestación a Demanda Enmendada sobre Sentencia Declaratoria*.[2] En primer lugar, alegó que la OAT no adquirió la propiedad arrendada al suscribir el Contrato. A su vez, señaló que el acuerdo no hacía mención o referencia alguna a la Ley Núm. 345-2000. Dicho esto, sostuvo que el apelante se comprometió a asumir el pago de las contribuciones sobre el área arrendada, así como proveer a la OAT una certificación

---

[1] *Demanda Enmendada sobre Sentencia Declaratoria*, págs. 69-79 del apéndice del recurso.
[2] *Contestación a Demanda Enmendada sobre Sentencia Declaratoria*, págs. 119-127 del apéndice del recurso.

de la autoridad gubernamental correspondiente o cualquier otra evidencia demostrativa de haber satisfecho mencionado pago. Finalmente, puntualizó que el pago de contribuciones sobre la propiedad estaba comprendido en el canon de arrendamiento.

El 17 de abril de 2024, el CRIM presentó su *Contestación a Demanda Enmendada sobre Sentencia Declaratoria, Reconvención y Solicitud de Remedios Provisionales*.[3] Mediante esta, reclamó el pago de la suma adeudada de $4,039,344.00 por concepto de contribución sobre la propiedad. Así pues, solicitó que se emitiera una orden provisional para que se consignara el canon de arrendamiento a los efectos de asegurar la efectividad de la sentencia en torno al cobro de dinero.

Tras varios incidentes procesales, el 15 de noviembre de 2024, West Coast presentó una *Solicitud de Sentencia Sumaria* y una *Solicitud de Determinaciones de Hechos en Apoyo de Moción para que se dicte Sentencia Sumaria Bajo la Regla 36.1 de Procedimiento Civil*.[4] Allí, enumeró treinta y ocho (38) hechos que, a su juicio, no estaban en controversia. Posteriormente, alegó que el Contrato reflejaba que la intención de las partes era que la OAT adquiriera la propiedad arrendada, por lo que, caía bajo el esquema de la Ley Núm. 345-2000. Así pues, aseveró que el inmueble estaba exento de contribuciones sobre la propiedad.

---

[3] *Contestación a Demanda Enmendada sobre Sentencia Declaratoria, Reconvención y Solicitud de Remedios Provisionales*, págs. 128-130 del apéndice del recurso.
[4] *Solicitud de Sentencia Sumaria*, págs. 146-157 del apéndice del recurso; *Solicitud de Determinaciones de Hechos en Apoyo de Moción para que se dicte Sentencia Sumaria Bajo la Regla 36.1 de Procedimiento Civil*, págs. 158-239 del apéndice del recurso.

En respuesta, el 16 de diciembre de 2024, el CRIM presentó su *Oposición a Solicitud de Sentencia Sumaria*.[5] En esta, indicó que existía controversia en cuanto los hechos núm. 11, 15, 22-24, 33-34, y 37 de la solicitud de sentencia sumaria. Esbozó que lo argumentado por el apelante no constaba en el Contrato. A su vez, señaló que un contrato de arrendamiento con opción de compra no transfería la titularidad de una propiedad hasta que se cumplieran sus condiciones. Por tanto, manifestó que West Coast era el dueño y titular de la Propiedad para los efectos del pago de contribuciones.

El 23 de diciembre de 2024, la OAT presentó su *Comparecencia en torno a Solicitud de Sentencia Sumaria presentada por West Coast Development Corporation*.[6] Allí, alegó que, conforme el Contrato, la OAT no era dueña de la Propiedad independientemente de la intención de las partes. Por otro lado, manifestó que la controversia giraba en torno a si la exención del pago de contribuciones al amparo de la Ley Núm. 345-2000 era o no extensiva a West Coast.

Luego de varios trámites, el 11 de abril de 2025, el foro primario notificó la *Sentencia*.[7] Mediante esta, consignó cincuenta (50) determinaciones de hechos. A base de estos hechos y el derecho aplicable determinó que la exención bajo la Ley Núm. 345-2000 comenzaba a aplicar una vez la OAT adquiriera la titularidad de la propiedad inmueble. En particular, puntualizó que las exenciones contributivas tenían que surgir expresamente

---

[5] *Oposición a Solicitud de Sentencia Sumaria*, págs. 240-245 del apéndice del recurso.
[6] *Comparecencia en torno a Solicitud de Sentencia Sumaria presentada por West Coast Development Corporation*, págs. 246-252 del apéndice del recurso.
[7] *Sentencia*, págs. 487-511 del apéndice del recurso.

en el estatuto. A esos efectos, concluyó que contrario a lo argumentado por West Coast, la Ley Núm. 345-2000 no eximía a los arrendadores del pago del CRIM. Por lo cual, resolvió que estos eran responsables por el pago de las contribuciones impuestas sobre el inmueble donde radicaba y operaba el Centro Judicial de Mayagüez.

En cuanto la *Reconvención* que presentó el CRIM, el foro *a quo* la declaró *No Ha Lugar* y la desestimó por prematura. Esbozó que, West Coast no había tenido la oportunidad de agotar el procedimiento administrativo que le confería el Artículo 7.065 de la Ley Núm. 107 de 13 de agosto de 2020, según enmendada, 21 LPRA sec. 8022. Por lo cual, concluyó que no se podía considerar la determinación del CRIM, y la cuantía adjudicada, como una final y judicialmente revisable.

Inconforme, el 12 de mayo de 2025, el apelante presentó el recurso que nos ocupa y formuló los siguientes señalamientos de error:

> Primer Error: Erró el Tribunal de Primera Instancia al concluir que no aplica la exención contributiva contemplada en la Ley 345-2000 porque la OAT nunca adquirió la titularidad de la propiedad objeto del contrato.

> Segundo Error: Erró el Tribunal de Primera Instancia en su interpretación del contrato suscrito entre West Coast y la OAT.

> Tercer Error: Erró el Tribunal de Primera Instancia al determinar que la intención de las partes era que West Coast asumiera la responsabilidad del pago de las contribuciones.

Atendido el recurso, el 19 de mayo de 2025, emitimos una *Resolución* concediéndole a la parte apelada el término dispuesto en el Reglamento de este Tribunal para que presentara su alegato.

Conforme ordenado, el 9 de junio de 2025, el CRIM presentó su *Oposición a Apelación*. De igual forma, el 11 de junio de 2025, la OAT presentó su *Comparecencia en Cumplimiento de Resolución*.

El 13 de junio de 2025, West Coast presentó una *Solicitud de Autorización para Replicar a los Alegatos del CRIM y de la OAT*. Examinado el escrito, el 2 de julio de 2025, emitimos una *Resolución* mediante la cual declaramos *No Ha Lugar* a la solicitud.

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso.

**II.**

**-A-**

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria parcial para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.1; *Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20, 25 (1986). Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *Cruz, López v. Casa Bella y otros*, 2024 TSPR 47, 213 DPR __ (2024); *Oriental Bank v. Caballero García*, 212 DPR 671, 678 (2023); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018).

Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Oriental Bank v. Caballero García*, supra, pág. 679; *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Universal Ins. y otro v. ELA y Otros*, 211 DPR 455, 457 (2023); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así la economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 979-980; *Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.*, supra, pág. 676; *Vera v. Dr. Bravo, supra,* pág. 334; PFZ *Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia la inexistencia de una controversia real respecto a los hechos materiales y

esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Rodríguez García v. UCA*, supra, pág. 941; *Ramos Pérez v. Univisión*, 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo*, supra, pág. 333. Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas, et al.*, supra pág. 677; SLG *Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432-433 (2013).

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *Roldán Flores v. M. Cuebas, et al.,* supra, pág. 678; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 434; *Rodríguez de Oller v. TOLIC*, 171 DPR 293, 311 (2007). En esta tarea, tiene el deber de citar específicamente los párrafos, según enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, supra; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo lo debe llevar a resolver en contra de dicha solicitud. *Vera v. Dr. Bravo*, supra, págs. 333-334; *Mgmt. Adm. Servs., Corp. v. ELA*, 152 DPR 599, 611 (2000). Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA*, supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 185 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 981-982; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo*, supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este

foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> Primero, reafirmamos lo que establecimos en *Vera v. Dr. Bravo*, supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, supra, y discutidos en *SLG Zapata-Rivera v. JF Montalvo*, supra.
>
> Tercero, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.
>
> Cuarto, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

**-B-**

Conforme surge de la *Exposición de Motivos* de la Ley Núm. 345-2000, *supra*, al promulgar este estatuto la Asamblea Legislativa tuvo el interés de que el Poder

Judicial contara con suficiente flexibilidad para obtener las propiedades o bienes necesarios para proveer una justicia más adecuada y accesible al pueblo. A tales efectos, le otorgó al Juez Presidente del Tribunal Supremo de Puerto Rico o al Director Administrativo de los Tribunales, por delegación de éste, la facultad para:

a) Adquirir en cualquier forma legal, incluyendo pero sin limitarse a la adquisición por compra, arrendamiento con opción a compra, manda, legado o donación; así como poseer, conservar, usar, disponer cualquier bien ya sea mueble o inmueble, mejorado o sin mejorar; valor, derecho o interés en el mismo, de la forma que considere más efectiva, eficiente y necesaria en beneficio de la Rama Judicial.

b) [. . .]

c) Disfrutar de exención del pago de contribuciones, arbitrios o impuestos sobre la propiedad adquirida.
[. . .]. Art. 1 de Ley Núm. 345-2000, 4 LPRA sec. 24j.

### III.

En el caso de autos, West Coast mediante sus tres (3) señalamientos de error nos solicita que revoquemos la *Sentencia* notificada el 11 de abril de 2025.

No obstante, antes de entrar a los méritos del recurso, debemos examinar *de novo* si la *Solicitud de Sentencia Sumaria* presentada por el apelante, así como la oposición instada por el CRIM, cumplió con los requisitos de forma que exige la Regla 36.3 de Procedimiento Civil, *supra*. Un análisis de dicha solicitud nos lleva a concluir que West Coast no cumplió con aludida regla. En su moción, no incluyó una relación concisa y organizada en párrafos enumerados de los hechos esenciales incontrovertidos, sino que los presentó en un escrito a parte con sus respectivos anejos.

De igual manera, la oposición tampoco cumplió con los requisitos de forma de dicha regla. El CRIM se limitó a indicar los hechos que estaban en controversia sin referencia alguna a la prueba que lo estableciera. Ahora bien, tales incumplimientos no conllevan la denegación de la solicitud o la concesión automática del remedio solicitado, sino corresponde determinar si existe un hecho material controvertido que impida la resolución del pleito por la vía sumaria. Así pues, examinado los autos que obran en el expediente juzgamos que no existen hechos materiales y pertinentes en controversia, por lo cual, procede evaluar la corrección de la aplicación del derecho.

Superado lo anterior, atenderemos los señalamientos de error presentados por el apelante. En el primer señalamiento de error, alega que el Tribunal de Primera Instancia erró al concluir que la exención contributiva al amparo de la Ley Núm. 345-2000 no le era extensiva, ya que la OAT nunca adquirió la titularidad de la Propiedad. Sostiene que el arrendamiento con opción a compra es una forma de "adquisición" para efecto de dicha ley. Además, indica que de haberse requerido el traspaso de titularidad, la ley así lo hubiera expresado. En este sentido, arguye que el Tribunal *a quo* añadió requisitos que no estaban contemplados en el estatuto.

En su segundo señalamiento de error, asevera que el foro primario erró en la interpretación del Contrato. Esboza que dicho acuerdo no se regía por las normas generales de contrato, sino por leyes especiales. Así pues, plantea que la Ley Núm. 345-2000 fue promulgada para proveer edificaciones con la menor erogación de

fondos públicos posibles. Por lo cual, su propósito se vería derrotado si el Poder Judicial tuviera que pagar impuestos que nunca pagaría de haber construido las facilidades con sus propios fondos.

De otra parte, aduce que la falta de inclusión o referencia a la Ley Núm. 345-2000 en el Contrato no tiene efecto alguno en su aplicación. Arguye que, la exención contributiva opera por el mero hecho de constar en el estatuto y no surge requisito adicional alguno, más allá de la adquisición por parte de la OAT mediante cualquier forma legal.

En el tercer señalamiento de error, manifiesta que el foro primario erró al determinar que la intención de las partes era que West Coast asumiera la responsabilidad del pago de las contribuciones. Alega que, conforme al testimonio de la Lcda. Mercedes Marrero de Bauermeister (Lcda. Marrero), la intención fue que aplicara le exención de la Ley Núm. 345-2000. No obstante, señala que el foro primario se enfocó en una enmienda al Reglamento de Subasta de la OAT de 2017, el cual establecía que el arrendador venía obligado a pagar contribuciones del CRIM.

A su vez, indica que igualmente incidió al interpretar que la existencia de un *escrow account* implicaba que el apelante reconocía su obligación contributiva. Esboza que, la cuenta plica fue impuesta por Oriental Bank como mecanismo de protección, por tanto, no evidencia una intención de pago, sino una previsión bancaria ante un escenario litigioso.

Por su lado, el CRIM asevera que en un contrato de arrendamiento con opción de compra no se transfiere la titularidad de la propiedad hasta que se cumplan las

condiciones establecidas. Así, sostiene que una vez finalizado el arrendamiento y ejercitado la opción de compra, es cuando la propiedad sería adquirida para fines del inciso (c) del Artículo 1 de la Ley Núm. 345-2000. Por ello, esboza que la *Sentencia* fue dictada conforme a derecho.

De otra parte, la OAT aduce que resulta inmaterial para propósitos de esta controversia la supuesta intención de las partes al suscribir el Contrato. Manifiesta que la controversia gira en torno a si, bajo los términos de la Ley Núm. 345-2000, West Coast estaba o no exento del pago de contribuciones sobre la propiedad.

Por estar debidamente relacionados, discutiremos los señalamientos de error en conjunto. Conforme surge del expediente, West Coast y la OAT llevaron a cabo un contrato de arrendamiento con opción de compra por un término de treinta (30) años. Transcurrido dicho plazo, el apelante se obligaba a vender y la OAT a comprar la propiedad arrendada por el precio convenido de un dólar ($1.00). Ante estos hechos, West Coast arguye que, realizada la tradición, la OAT adquirió para los efectos de la Ley Núm. 345-2000, por lo cual, estaba exento del pago de contribuciones sobre la propiedad. En apoyo, hizo referencia a la deposición de Lcda. Marrero, quien como Directora de la OAT en aquel entonces, suscribió el Contrato bajo el fundamento de que la Propiedad estaría exenta de pagos al CRIM.[8]

---

[8] *Deposición de: Lcda. Mercedes Marrero de Bauermeister* tomada el 17 de julio de 2024, pág. 177, líneas 4-15; pág. 178, líneas 6-14; y pág. 183, líneas 3-14 del apéndice del recurso.

Para los propósitos de este análisis, resulta necesario reiterar que el Artículo 1 de la Ley Núm. 345-2000, *supra*, dispone que:

> El Juez Presidente del Tribunal Supremo de Puerto Rico o el Director Administrativo de los Tribunales, por delegación de éste, tendrá la facultad para:
>
> a) Adquirir en cualquier forma legal, incluyendo pero sin limitarse a la adquisición por compra, arrendamiento con opción a compra, manda, legado o donación. […]
>
> b.) […]
>
> c) Disfrutar de exención del pago de contribuciones, arbitrios o impuestos sobre la propiedad adquirida.
>
> […].

Así, examinado dicho artículo no encontramos que sus disposiciones sean extensivas a West Coast. En primer lugar, establece que el Juez Presidente del Tribunal Supremo o el Director Administrativo de los Tribunales tendrá la facultad para disfrutar de una exención contributiva sobre la propiedad adquirida. El apelante alega que la "adquisición" se llevó a cabo con la mera tradición, sin requerir el traspaso de titularidad. Similarmente, en su deposición, la Lcda. Marrero declaró que adquirió la facilidad al principio del arrendamiento, por tanto, la OAT era dueña, aunque no titular.[9] No obstante, el inciso (a) del Artículo 1 dispone que se adquiere mediante cualquier forma legal, incluyendo pero sin limitarse a la adquisición por "compra, arrendamiento con opción a compra, manda, legado o donación". Conviene subrayar que los métodos de adquisición previamente señalados conllevan un traspaso de titularidad. A su vez, examinada la ponencia de la Lcda. Marrero sobre el Proyecto de la Cámara 2860,

---

[9] Id., pág. 181, líneas 16-21; pág. 192, líneas 5-2.

no encontramos manifestación alguna en cuanto a las exenciones contributivas y menos que estas sean extensivas a terceras partes.[10]  Así, cabe añadir que en nuestro ordenamiento las exenciones contributivas deben interpretarse restrictivamente, es decir, a favor de la inexistencia.  *Coop. Ahorro Isabela v. Registrador*, 213 DPR 508, 518 (2024).  Ante ello, juzgamos que "adquirir" para los efectos de la Ley Núm. 345-2000 requiere el traspaso de un título.  Por lo cual, West Coast no podía aprovecharse de la exención contributiva contemplada en dicha ley dado que esta comienza una vez la OAT adquiera la titularidad del inmueble.

Por último, nuestro Máximo Foro ha sido enfático al expresar que "la contratación gubernamental se encuentra revestida del más alto interés público, por involucrar el uso de bienes o fondos gubernamentales".  *Demeter Int'l v. Srio. Hacienda*, 199 DPR 706, 729 (2018).  A esos efectos, ha determinado que todo contrato gubernamental debe cumplir con los siguientes requisitos: (1) reducirse a escrito; (2) mantener un registro que establezca su existencia; (3) remitir copia a la Oficina del Contralor de Puerto Rico, y (4) acreditar que se realizó y otorgó quince días antes. *SLG Ortiz-Mateo v. ELA,* 211 DPR 772, 794 (2023).  Por lo cual, la alegada intención de las partes al suscribir el Contrato resultaba inmaterial para la disposición del recurso.

En virtud de lo anterior, colegimos que los errores señalados no fueron cometidos, por lo que, confirmamos la *Sentencia* apelada.

---

[10] *Ponencia ante la Comisión de Gobierno de la Cámara de Representantes*, *Proyecto de la Cámara 2860*, págs. 197-201 del apéndice del recurso.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones